

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. PD-0865-13

**ROBERT WHITFIELD, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIRST COURT OF APPEALS
## FREESTONE COUNTY

ALCALA, J., filed a concurring opinion in which JOHNSON and COCHRAN, JJ., joined.

## CONCURRING OPINION

I respectfully concur in the Court's judgment reversing the court of appeals's dismissal of the appeal filed by Robert Whitfield, appellant, and remanding the case for consideration on the merits of whether the evidence supports the convicting court's finding that DNA results are unfavorable to him. *See Whitfield v. State*, 409 S.W.3d 11, 11 (Tex. App.—Houston [1st Dist.] 2013). Like the majority opinion, I conclude that the court of

appeals has statutory jurisdiction to address appellant's complaint under Chapter 64 of the Texas Code of Criminal Procedure, which provides that an "appeal under this chapter is to a court of appeals in the same manner as an appeal of any other criminal matter." *See* TEX. CODE CRIM. PROC. ANN. art. 64.05 (West 2011). This conclusion, however, does not fully resolve the issue before us in this case because the court of appeals did not dismiss appellant's complaint based on a perceived lack of statutory jurisdiction. Rather, relying on this Court's opinion in *State v. Holloway*, it held that it lacked jurisdiction on the basis that any opinion reviewing the trial court's finding under Chapter 64 would be advisory only. *See Whitfield*, 409 S.W.3d at 11 (citing *State v. Holloway*, 360 S.W.3d 480 (Tex. Crim. App. 2012)). The majority opinion does not directly address this key aspect of the lower court's holding, nor does it otherwise address, in any detail, the issue of whether appellate review of a convicting court's Chapter 64 finding would result in an impermissible advisory opinion. Instead, it summarily overrules *Holloway*, in which this Court held that a court of appeals would err to address a State's appeal of fact findings favorable to a convicted person because any opinion on the merits of the DNA finding would result in an advisory-only opinion. *Holloway*, 360 S.W.3d at 490. The majority opinion reasons that *Holloway* should be overruled in light of the legislative intent to grant the courts of appeals the authority to review a trial court's findings under the DNA statute. Although I agree with the majority opinion's conclusion that *Holloway* was mistaken in its holding, I do not find that the existence of a legislative intent to permit an appeal is necessarily dispositive of the question

whether an opinion by an appellate court reviewing such a finding would nevertheless be advisory. *See id*.

Because I determine that the majority opinion's analysis leaves unanswered several key questions with respect to the issue of advisory opinions under Chapter 64, I conduct an independent analysis of that matter below. I conclude that, regardless of whether the appellant is the convicted person or the State, an opinion by a court of appeals reviewing a trial court's finding that DNA results are either favorable or unfavorable to a convicted person does not constitute an impermissible advisory opinion because (1) appellate review of the trial court's Chapter 64 finding in no way infringes upon this Court's exclusive habeas-corpus jurisdiction, and (2) any resulting opinion from a court of appeals is not advisory-only in that it is final and binding on the parties. After conducting a comprehensive extra-textual analysis of the statute in Part I, I consider the matter of advisory opinions in Part II.

**I. Legislature Intended to Give Parties Right to Appeal Finding Under Chapter 64**

I agree with the majority opinion's determination that the Chapter 64 provision providing for a right of appeal is ambiguous with respect to what matters are appealable under the statute, and I further agree with its ultimate conclusion that the Legislature intended to make a trial court's finding under the statute appealable. But I do not join the majority opinion's statutory analysis because it reaches its conclusion after considering only one sentence in the statute's legislative history, rather than after considering all of the

applicable extra-textual factors. After considering all of the pertinent extra-textual factors, I conclude, consistent with the majority opinion's holding, that the Legislature intended to grant the parties the right to appeal a convicting court's finding made under Chapter 64.

### A. Analysis of Extra-Textual Factors

As the majority opinion observes, the language of the Chapter 64 provision that grants a right of appeal is ambiguous in that it fails to expressly identify which matters may be appealed under that statute. *See* TEX. CODE CRIM. PROC. art. 64.05. When reviewing ambiguous statutory language, this Court properly resorts to an analysis of extra-textual factors to discern what the Legislature would have intended in drafting that language. *See Johnson v. State*, 423 S.W.3d 385, 394-95 (Tex. Crim. App. 2014); *see also Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991); *Ex parte Valdez*, 401 S.W.3d 651, 655 (Tex. Crim. App. 2013). In conducting an extra-textual inquiry, this Court may consider, among other matters, (1) the object sought to be attained, (2) the title, (3) former statutory provisions, including laws on the same or similar subjects, (4) the circumstances under which the statute was enacted, (5) legislative history, and (6) the consequences of a particular construction. *See* TEX. GOV'T CODE § 311.023; *see also Druery v. State*, 412 S.W.3d 523, 533-34 (Tex. Crim. App. 2013).[1] I address each of the relevant factors below.

### (1) Object Sought to Be Attained and (2) Title

---

[1] Although it is also appropriate to consider a seventh matter, any administrative construction of the statute, I exclude that extra-textual factor from my analysis because it is not relevant to resolving the dispute before us. *See* TEX. GOV'T CODE § 311.023.

By examining the various provisions contained within Chapter 64, I conclude that the statutory scheme advances primary and secondary objectives. Furthermore, I conclude that those objectives are consistent with a legislative intent to make all matters under the DNA statute appealable, including the trial court's finding that DNA test results are favorable or unfavorable to a convicted person. *See* TEX. CODE CRIM. PROC. arts. 64.04, 64.05.

As the State argues in its brief on discretionary review, the primary object sought to be attained by Chapter 64 is the establishment of a procedure by which a convicted person may obtain DNA testing for the purpose of challenging the validity of his conviction. Specifically, Chapter 64 grants the convicting court the authority to order post-conviction DNA testing where the identity of the culprit was or is an issue in the case. *See State v. Patrick*, 86 S.W.3d 592, 596 (Tex. Crim. App. 2002) (observing that, "prior to the enactment of Chapter 64, [] trial court[s] would not have had jurisdiction to enter any order relating to post-conviction DNA testing"). In response to a motion for DNA testing, Chapter 64, which is titled "Motion for Forensic DNA Testing," clearly sets forth the criteria for the convicting court to consider before ordering the testing. *See* TEX. CODE CRIM. PROC. art. 64.03(a). A convicting court should order DNA testing if (1) the evidence still exists; (2) it is in a condition making DNA testing possible; (3) it was subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; (4) identity was or is an issue in the case; (5) the convicted person establishes by a preponderance of the evidence that he would not have been convicted if

exculpatory results had been obtained through DNA testing; and (6) the request for the proposed DNA testing is not made to unreasonably delay the execution of the sentence or administration of justice. *Id.* This Court has described the type of situation that would require DNA testing under Chapter 64 as one in which the identity of the attacker could be established by testing his DNA left on the victim, as follows:

> Appellant's 2005 motion for DNA testing has fairly alleged, and shown by a preponderance of the evidence, that the victim's lone attacker is the donor of the material for which appellant seeks DNA testing. Thus, on this record, exculpatory DNA test results, excluding appellant as the donor of this material, would establish appellant's innocence. The legislative history of Chapter 64 of the Texas Code of Criminal Procedure very clearly shows that this is precisely the situation in which the Legislature intended to provide post-conviction DNA testing.

*Blacklock v. State*, 235 S.W.3d 231, 232-33 (Tex. Crim. App. 2007). The primary objective of permitting DNA testing is further served by the requirement that the convicting court must appoint counsel under certain circumstances to assist an indigent convicted person in his pursuit of DNA testing. *See* TEX. CODE CRIM. PROC. art. 64.01(c) (court must appoint counsel "if the person informs the court that the person wishes to submit a motion under this chapter, the court finds reasonable grounds for a motion to be filed, and the court determines that the person is indigent").

Although it does not appear to be its primary objective, Chapter 64 clearly has a secondary objective in that it directs the convicting court to evaluate the results of the testing.

First, the trial court must hold a hearing on the test results. *See id*. art. 64.04.[2] After the hearing, the statute requires the trial court to make a finding as to whether the results are favorable or unfavorable to the convicted person. *Id*. Article 64.04 states,

> Finding. After examining the results of testing under Article 64.03 and any comparison of a DNA profile under Article 64.035, the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted.

*Id*.[3]

Although Chapter 64 has both primary and secondary objectives, the State argues that the right of appeal should be limited only to the statute's primary objective, that is, whether the trial court grants or denies a request for DNA testing. But there is nothing in the language of the statute that suggests it should be narrowly construed to apply only to the primary objective of providing for DNA testing. *See id*. art. 64.05 (providing for right of "appeal under this chapter," and stating that such an appeal is "to a court of appeals in the same manner as an appeal of any other criminal matter"). Rather, in light of the absence of any language that would limit the right of appeal to any particular objective or subpart of Chapter 64, the statutory objectives appear to indicate that the Legislature intended to grant

---

[2]    *See also Rivera v. State*, 89 S.W.3d 55, 58-59 (Tex. Crim. App. 2002) (stating that Legislature provided for Article 64.04 hearing for purpose of "giv[ing] the parties a forum to submit evidentiary matters relating to the [DNA] test results").

[3]    The statute further provides that if the DNA results show an unidentified DNA profile, the trial court shall order that it be compared with certain governmental databases if an analyzed sample meets applicable state or federal requirements. *See* TEX. CODE CRIM. PROC. art. 64.035.

a broad right of appeal that encompasses all the matters discussed in the statute.

**(3) Former Statutory Provisions and Laws on Same or Similar Subjects**

I conclude that the Legislature's amendment of the former statutory provision to expressly remove any reference to the appealability of a "finding" indicates that the Legislature intended to broaden the scope of what would constitute an appealable matter under the statute. I further conclude that the Legislature amended the appeals provision in direct response to this Court's holding that the statutory language was ambiguous in *Kutzner v. State*, 75 S.W.3d 427, 429 (Tex. Crim. App. 2002). Both of these factors lead me to conclude that the Legislature intended to create a broad right of appeal under Chapter 64 that would encompass all the matters described in Chapter 64.

**a. Analysis of Former Statutory Language**

As initially enacted in 2001, Article 64.05, which established a right of appeal under Chapter 64, stated, "An appeal of a finding under Article 64.03 or 64.04 is to a court of appeals, except that if the convicted person was convicted in a capital case, the appeal of the finding is a direct appeal to the court of criminal appeals." *See* Act of Apr. 3, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2, 4 (amended 2003) (current version at TEX. CODE CRIM. PROC. ANN. art. 64.05 (West 2011)). In *Kutzner*, this Court determined that this statutory language was ambiguous and considered extra-textual factors to determine what the Legislature intended by this language. *See Kutzner*, 75 S.W.3d at 433. Although the former appeals statute had narrowly referred to "a finding" under Article 64.03 or 64.04 as being

appealable, this Court nevertheless held that it had jurisdiction on direct appeal to address all of the "determinations" made by the trial court under those specific articles. *Id*. at 433-35; *see also Neveu v. Culver*, 105 S.W.3d 641, 643 (Tex. Crim. App. 2003) (stating that prior version of Article 64.05 provided for appealing a finding under Articles 64.03 or 64.04). This Court explained in *Kutzner*, "Our review of the legislative history of Chapter 64 actually supports deciding that the Legislature intended to authorize appellate review of all of the convicting court's Article 64.03 determinations [appeals of orders for tests]." *Kutzner*, 75 S.W.3d at 434.

### b. Analysis of Current Statute

Following this Court's decision in *Kutzner*, the Legislature amended the provision governing the right of appeal under Chapter 64 by enacting the current version that became effective on September 1, 2003.[4] *See* TEX. CODE CRIM. PROC. art. 64.05. The current version now states,

> APPEALS. An appeal under this chapter is to a court of appeals in the same manner as an appeal of any other criminal matter, except that if the convicted person was convicted in a capital case and was sentenced to death, the appeal is a direct appeal to the court of criminal appeals.

*Id*. The current version omits the former version's reference to a "finding under Article 64.03 or 64.04" and replaces that language with the phrases "under this chapter" and "in the same manner as an appeal of any other criminal matter." *Id*. Subsequent to the Legislature's amendment, this Court in *Wolfe v. State* analyzed the meaning of the changes from the

---

[4]     *See* Act of Apr. 25, 2003, 78th Leg., R.S., Ch. 13, § 1 (Tex. H.B. 1011).

former to the current version of the statute. *See Wolfe v. State*, 120 S.W.3d 368, 372 n.5 (Tex. Crim. App. 2003) (holding that appellate court lacked jurisdiction under Chapter 64 to review Wolfe's complaint that he was not appointed an independent expert to review DNA results). This Court concluded that, by deleting the reference to the appealability of a "finding" and replacing it with a generic reference to an appeal "under this Chapter," the Legislature had effectively "broaden[ed] the scope of Chapter 64 to include appeals not previously permitted." *Id*. The amended statute, it reasoned, appeared to extend the scope of appeals to "include issues pertaining to all Articles of Chapter 64." *Id*. Other courts have echoed this interpretation of the legislative amendment. *See Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd); *James v. State*, 196 S.W.3d 847, 849 (Tex. App.—Texarkana 2006, no pet.).

This Court in *Wolfe*, however, failed to discuss what the Legislature may have intended by adding the phrase "in the same manner as an appeal of any other criminal matter" into the current version. *See* TEX. CODE CRIM. PROC. art. 64.05. The use of the word "criminal" signifies that the appeal is to be treated as a criminal matter rather than as a civil matter. Furthermore, the phrase "in the same manner" suggests that the appeal is intended to conform to the Texas Rules of Appellate Procedure for criminal cases and the requirements in the Texas Code of Criminal Procedure.[5] Addressing this aspect of the

---

[5]  *See* TEX. CODE CRIM. PROC. art. 44.01(a)(6) (permitting State's appeal of order issued under Chapter 64); *see also Swearingen v. State*, 189 S.W.3d 779, 780 (Tex. Crim. App. 2006) (observing that "Chapter 64 contains its own appellate provision" that "by its plain language . . . directs that all
(continued...)

statutory language in its brief on discretionary review, the State argues that this "in the same manner" language could potentially be interpreted to grant a convicted person a right of appeal not afforded to the State. It observes that the Code of Criminal Procedure limits the State's right of appeal under Chapter 64 to an "order" issued under that Chapter. *See id.* art. 44.01(a)(6) ("State is entitled to appeal an order of a court in a criminal case if the order: . . . is issued under Chapter 64." ). Although the State argues that it would be inequitable to permit a convicted person the right to appeal a trial court's finding under the DNA statute if such an appeal is not permitted when brought by the State, I conclude that the State's concerns in this regard are unjustified. The record before us indicates that the convicting court's finding that DNA results were unfavorable to appellant was included within a document entitled "Order On Findings of Fact and Conclusions of Law After 64.04 Hearing." But regardless of how these particular findings of fact were labeled, this Court has often said that we apply the law by focusing on substance over form so that we treat a matter based on what it is rather than how it is named. Furthermore, the word "order" is undefined in Chapter 64 and Article 44.01. *See id.* arts. 44.01(a)(6), 64.01-64.05. At a minimum, this Court has held that, for purposes of a State's appeal, an order must be in writing and signed by the judge. *State v. Sanavongxay*, 407 S.W.3d 252, 258 (Tex. Crim. App. 2012). Beyond these requirements, there are few limitations on what may be considered an order of the

---

[5](...continued)
appeals follow the usual procedures designated for appeals *to the courts of appeals*," and noting that movants under the DNA statute must "meet applicable filing and time requirements found in the Rules of Appellate Procedure").

court, as long as the information conveyed in the writing directs someone to do something or not to do something, or legally establishes something. Here, the trial court's order legally established its finding that the DNA results were unfavorable to appellant. I, therefore, am persuaded that the trial court's findings of fact and conclusions of law in this case are properly characterized as an order issued under Chapter 64. *See* TEX. CODE CRIM. PROC. art. 44.01(a)(6). Under the related provisions in the Code, therefore, both the appellant and the State appear to have a right of appeal as to the convicting court's fact findings on DNA results.

I conclude that the amendment to the former version of the Chapter 64 appeals provision indicates a legislative intent to more broadly permit an appeal "under this chapter" as long as the appeal conforms to pertinent appellate rules and the criminal Code. *See id.* arts. 44.01, 64.05.

**(4) The Circumstances Under Which the Former Statute Was Enacted**

The circumstances under which Article 64.05 was originally enacted in 2001 show that the Legislature intended at that time to give the parties the right to appeal both (1) the convicting court's ruling granting or denying DNA testing and, (2) if testing was conducted, its finding on the results of the testing. *See id.* arts. 64.03-64.05. Referring to a bill analysis from the House Research Organization, this Court in *Kutzner* explained that Chapter 64, as originally introduced, had not provided for any right of appeal, but the bill was later amended to authorize "[a]ppeals of orders for tests [under Article 64.03] or of findings about test

results [under Article 64.04]." *Kutzner*, 75 S.W.3d at 434; *see* Senate Research Center, Bill Analysis, Tex. S.B. 3, at 4, 77th Leg., R.S. (Jan. 25, 2001) (bill on DNA law initially failed to provide for any appeal when it was introduced); Senate Research Center, Bill Analysis, Tex. C.S.S.B. 3, at 5, 77th Leg., R.S. (Feb. 13, 2001) (right to appeal introduced in Senate Bill 3 that related "to the appeal of findings under proposed Article 64.04, Code of Criminal Procedure"). I conclude that the circumstances under which Chapter 64's appeals provision was originally enacted show that the Legislature intended to permit the type of appeal at issue in this case, namely, an appeal challenging the sufficiency of the evidence to support the trial court's finding that DNA testing is unfavorable to the convicted person.

**(5) The Legislative History**

Appellant contends that the change in the language from the former version to the current version of the Chapter 64 appeals provision shows that the Legislature intended to expand rather than restrict the scope of appealable matters under that statute. Agreeing with appellant's representation of the legislative history, this Court's majority opinion states,

> The bill analysis provided by the House Committee on Criminal Jurisprudence at the time of the 2003 amendments said, "[This bill] makes it clear that both the request for a test (based on legal or factual determinations) and the findings by the trial court are appealable."

Although I agree with both appellant and this Court's majority opinion as to that ultimate assessment about the legislative history, I consider the entire legislative history to reach my conclusion rather than focus on a single sentence in the bill analysis.

The current version of the statute describing the right of appeal under Chapter 64 was

introduced in 2003 through an amendment as House Bill 1011 in the Texas House of Representatives. According to the bill's author, Representative Hochberg, who described the bill at the hearing before the House Criminal Jurisprudence Committee, the bill supporting the current version of the law was attempting to clarify what had been originally enacted rather than to expand the law. Hochberg said that the bill was "strictly cleanup" and "doesn't attempt to add anything, [but] attempts to clarify what was intended in the first place," which was necessary because various court rulings had departed from what had been the original intent of the legislators who enacted the law. *See* Hearing on Tex. H.B. 1011 Before the House Criminal Jurisprudence Committee, 78th Leg., R.S. (Mar. 11, 2003) (digital files available from http://www.house.state.tx.us/video-audio/committee-broadcasts/78/). With respect to the current version's deletion of the phrase "a finding under Article 64.03 or 64.04" and addition of the phrase "under this chapter," Representative Hochberg asserted that the change was necessary to clarify that an appeal was not limited to a finding by the trial court. *Id*. He related that appeals could be presented as to determinations of law in addition to factual findings. *Id*. Furthermore, with respect to the current version's addition of the phrase "in the same manner as an appeal of any other criminal matter," Representative Hochberg explained that the language was intended to clarify that the case was to be handled similarly to the appeal of a criminal pre-trial motion rather than as a civil appeal. *Id*. He stated,

> [T]here was actually a question raised in the *Kutzner* case as to whether this was a civil appeal, as to whether this motion was a civil matter or whether it

was a criminal matter and exactly who had the right to appeal and when. This clarifies that as well.

*Id*. (discussing *Kutzner*, 75 S.W.3d at 429).

In its bill analysis, the House Committee clarified that, in light of "some confusion in *Kutzner* as to what sections under the law could be appealed," the amendment from the former version to the current version was intended to clarify that the right of appeal would extend to all aspects of orders granting or denying DNA testing, as well as to the trial court's finding under Article 64.04 regarding whether DNA test results were favorable or unfavorable. *See* House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 1011, at 2, 78th Leg., R.S. (2003); *see Kutzner*, 75 S.W.3d at 433-35. The Committee noted that the amendment "makes it clear that both the request for a test . . . and the findings by the trial court are appealable." *Id*. Additionally, the Committee observed that the bill "giv[es] the prosecution the right to appeal." *Id*. A subsequent bill analysis noted that the bill "would eliminate the language limiting to 'findings' what can be appealed under Chapter 64." House Research Organization, Bill Analysis, Tex. H.B. 1011, at 2, 78th Leg., R.S. (2003).

A companion bill identical to House Bill 1011, Senate Bill 543, was introduced in the Texas Senate by Senator Duncan, who was the original author of Senate Bill 3 in 2001, which passed Chapter 64 into law. *See* Senate Research Center, Bill Analysis, S.B. 543, 78th Leg., R.S., at 1 (Mar. 19, 2003). In a hearing before the Senate Committee on Criminal Justice, Senator Duncan testified that Chapter 64 was intended to be "a post-trial procedure . . . different from habeas corpus." Hearing on Tex. S.B. 543 Before the Senate Criminal

Justice Committee, 78th Leg., R.S. (Mar. 19, 2003) (digital files available from Senate Staff Services Office). Senator Duncan explained the changes in the former version of the bill to the current version similarly to the explanation provided by Representative Hochberg. The House later adopted several amendments to the bill unrelated to the right of appeal, and the amended bill was passed without further change by the House and Senate.

Although it may be questioned whether the Legislature intended to grant a right of appeal as to interim orders issued under Chapter 64, such as whether to appoint counsel for an indigent person, the legislative history clearly shows that the Legislature always intended to permit an appeal of the trial court's order making a finding as to whether DNA test results are favorable or unfavorable to a convicted person.[6] Furthermore, the legislative history definitively reflects an intent to grant the State the right of appeal as to a convicting court's orders under Chapter 64.[7]

**(6) The Consequences of a Particular Construction**

---

[6] *See Gutierrez v. State*, 307 S.W.3d 318, 323 (Tex. Crim. App. 2010) (holding that trial court's order denying appointment of counsel under Chapter 64 did not constitute an immediately appealable order, but permitting eventual review of that matter on direct appeal following denial of testing under Article 64.05); *see also id.* at 322 (observing that appeals statute as originally enacted provided for right of appeal only as to availability of DNA testing and finding after testing).

[7] Examining the legislative history and text of Chapter 64, Professors Dix and Schmolesky have similarly concluded that, under the current statutory scheme, "[c]ertainly, the State can appeal from an order making a finding that if the results of conducted testing had been available during trial, the defendant would not have been convicted." GEORGE E. DIX AND JOHN M. SCHMOLESKY, 43B TEX. PRACTICE SERIES, CRIMINAL PRACTICE AND PROCEDURE, § 60:28 (3d ed.) (2013). Professors Dix and Schmolesky further observe that the current statutory language "provides no obvious limit on state appeals except that the order have been issued under Chapter 64." *Id.* (discussing scope of State's appeal under TEX. CODE CRIM. PROC. art. 44.01(a)(6)).

Consistent with the legislative history described above, the Court today holds that a court of appeals is authorized to review a convicted person's complaint that the evidence is insufficient to support the trial court's finding that DNA results are unfavorable to him. Although the facts of this case involve an unfavorable finding, the Court's holding would also apparently authorize an appellate court to review a trial court's finding that DNA test results are favorable to a convicted person. By permitting a direct appeal of favorable or unfavorable findings, the practical consequence will likely be a delay in any ultimate post-conviction relief that a convicted person may seek through a writ of habeas corpus in this Court. If this Court decides to delay consideration of an application for a writ of habeas corpus based on a trial court's favorable finding under the DNA statute until after the exhaustion of direct appeals under Chapter 64, then the following seven steps will likely occur:

1. A convicted person files a motion for DNA testing and, if appropriate, the trial court grants the DNA testing.

2. After receiving DNA results, the convicting court holds a hearing to determine whether the results of the DNA tests would make it reasonably probable that the person would not have been convicted had the results been available during the trial of the offense.

3. The convicting court will make a finding that is favorable or unfavorable to the convicted person.

4. If the finding is favorable to the convicted person, the State files a notice of appeal to challenge the finding, but if the finding is unfavorable, the convicted person files a notice of appeal to challenge the finding.

5. On appeal, the court of appeals reviews the sufficiency of the evidence

supporting the convicting court's finding under the statute and (a) affirms the finding, (b) reverses and renders the finding, or (c) reverses and remands for further findings by the convicting court.

6. The losing party at the court of appeals may file a petition for discretionary review with this Court and this Court would either reject or accept it and resolve the direct appeal on its merits.

7. After the direct appeals are exhausted, the convicted person could file an application for a writ of habeas corpus asserting either that (a) his favorable findings in the convicting court warrant a grant of post-conviction relief, or (b) his unfavorable findings are unsupported by the evidence and that this Court, as the ultimate fact finder on a writ of habeas corpus, is not bound by the convicting court's decision and should grant him relief from his conviction.

Because of steps four, five, and six that become applicable when a party proceeds with a direct appeal from the trial court's findings under the DNA statute, resolution of the direct appeal would result in some delay that could last months and possibly years before a wrongfully convicted person could obtain post-conviction relief through an application for a writ of habeas corpus. If the appeals process were to cause great delay, then it would likely violate the Texas Constitution's decree stating, "The writ of habeas corpus is a writ of right, and shall never be suspended. The Legislature shall enact laws to render the remedy speedy and effectual." TEX. CONST. art. I, § 12. Nonetheless, as long as the court of appeals and this Court expedite any appeals of a trial court's findings under Chapter 64, then any delay from a direct appeal could be minimized so as not to conflict with the Texas Constitution's guarantee of a speedy and effectual writ process. *See id.*[8]

---

[8] Although there may be some delay in an applicant obtaining post-conviction relief from his conviction, it may be that a direct appeal under the DNA statute has the indirect benefit of providing

(continued...)

Although there is nothing in Chapter 64 or the Habeas Corpus statute that requires this Court to delay consideration of an application for a writ of habeas corpus until after the exhaustion of direct appeals under Chapter 64, that is the only reasonable option that would make the entire statutory scheme effective.[9] By waiting until the direct-appeals process has concluded before considering any application for a writ of habeas corpus that purports to rely on exculpatory DNA results, this Court can ensure that litigants are not deprived of their statutorily authorized right to pursue a direct appeal under Chapter 64.

**B. Consideration of All the Pertinent Extra-Textual Factors**

Having conducted a de novo review of all of the relevant extra-textual factors, I conclude that the Legislature intended for a convicted person and the State to each have the

---

[8](...continued)
for his release from confinement more quickly than without the direct appeal because the State may be more willing to agree to habeas findings after the culmination of a direct appeal under Chapter 64. Article 11.65 states,

> On making proposed findings of fact and conclusion of law jointly stipulated to by the applicant and the state, or on approving proposed findings of fact and conclusions of law made by an attorney or magistrate appointed by the court to perform that duty and jointly stipulated to by the applicant and the state, the convicting court may order the release of the applicant on bond, subject to conditions imposed by the convicting court, until the applicant is denied relief, remanded to custody, or ordered released.

TEX. CODE CRIM. PROC. art. 11.65(b). Permitting a direct appeal, therefore, may have the indirect benefit of resulting in the release of a wrongfully convicted person on bail more quickly, even if the ultimate relief from his conviction is delayed because of the direct-appeal process.

[9]    *See Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012) (in interpreting statutes, we presume that the Legislature intended for the entire statutory scheme to be effective); *Skinner v. State*, 293 S.W.3d 196, 201-02 (Tex. Crim. App. 2009) (interpreting Chapter 64 provisions in conjunction and observing that, in interpreting statutes, we presume that the entire statute is "intended to be effective") (citations omitted).

right to appeal the trial court's findings and conclusions issued under Chapter 64. *See Harris v. State*, 359 S.W.3d 626, 629 (Tex. Crim. App. 2011) (statutory analysis requires de novo review). Although the legislative history indicates that the primary objective of Chapter 64 was to provide a vehicle by which a convicted person could obtain post-conviction DNA testing, the Legislature included a secondary objective in that chapter by requiring the convicting court to assess the meaning of the results and make a finding as to whether the DNA test results would be favorable or unfavorable to a convicted person. This Court's interpretation of the former and current versions of Chapter 64's appeals provision has consistently determined that the Legislature intended to permit an appeal of the trial court's finding on the results of DNA testing. Furthermore, by amending Code of Criminal Procedure Article 44.01 to expressly grant the State a right of appeal as to orders issued by the convicting court under Chapter 64, the Legislature has expressly indicated its intent to permit the State to appeal the trial court's findings under the DNA statute in the same manner as a convicted person would be permitted to appeal. I would hold that the court of appeals has statutory jurisdiction under Chapter 64 to address the appellant's complaint challenging the sufficiency of the evidence to support the convicting court's finding that the DNA results are unfavorable to him. *Id*.

## II. Appeal Authorized Under Chapter 64 is Not Advisory Only

The majority opinion appears to hold that, because the appellate court had statutory authority over the direct appeal pursuant to the provisions of Chapter 64, any resulting

opinion by the appellate court would necessarily not have been advisory. I do not entirely agree with that assessment because the matter of whether an appellate court's review of an issue would result in an impermissible advisory opinion is a separate question from the matter of whether the Legislature has statutorily authorized that court to consider an appeal. In light of this distinction, I examine the matter of advisory opinions and consider whether a court of appeals's opinion reviewing a convicting court's findings under the DNA statute would constitute a prohibited advisory opinion. I ultimately answer this question in the negative and, like the majority opinion, conclude that this Court's opinion in *Holloway* was mistaken in reaching the opposite result. *See Holloway*, 360 S.W.3d at 490. Contrary to the Court's reasoning in *Holloway*, I conclude that a court of appeals's opinion affirming or reversing a trial court's finding under the DNA statute would neither impermissibly infringe upon this Court's habeas jurisdiction, nor would it constitute a prohibited advisory-only opinion. I, therefore, agree with the conclusion reached by the majority opinion that the court of appeals improperly dismissed appellant's appeal for want of jurisdiction.

**A. This Court Has Exclusive Power to Issue Writs of Habeas Corpus**

A review of the Texas constitutional and statutory law applicable to writs of habeas corpus reveals that this Court has the exclusive authority to grant relief through a post-conviction writ of habeas corpus, although the Legislature retains the power to regulate it. The Texas Constitution states,

> Subject to such regulations as may be prescribed by law, the Court of Criminal
> Appeals and the Judges thereof shall have the power to issue the writ of habeas

corpus . . . . The Court and the Judges thereof shall have the power to issue such other writs as may be necessary to protect its jurisdiction or enforce its judgments. The court shall have the power upon affidavit or otherwise to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction.

TEX. CONST. art. V, § 5.

Pursuant to its constitutionally granted authority to enact laws regulating the writ remedy, the Legislature enacted a "Habeas Corpus" statute in chapter eleven of the Texas Code of Criminal Procedure describing court procedures that govern the availability and scope of this Court's habeas review. *See* TEX. CODE CRIM. PROC. arts. 11.01, et. seq. With respect to the procedures for felony convictions other than those in which the death penalty was imposed, Article 11.07 requires the convicting court, upon receiving an application for post-conviction relief, to decide whether there are controverted, previously unresolved facts material to the legality of the applicant's confinement, and, if so, to enter an order designating the issues of fact to be resolved. *Id*. art. 11.07, §§ 3(c), (d). To resolve those issues, the convicting court may order affidavits, depositions, interrogatories, additional forensic testing, and hearings, as well as using personal recollection. *Id*. art. 11.07, § 3(d). But "additional forensic testing" under the habeas-corpus statute does not include forensic DNA testing as provided for in Chapter 64. *Id*. art. 11.07, § 3(e); *compare id.* art. 64.03. After an evidentiary hearing, the convicting court, as the original fact finder, resolves the controverted facts by making findings of fact and then sends the writ application and the entire record to this Court so that this Court may decide the merits of an applicant's claims

as the ultimate fact finder. *Id*. art. 11.07, § 3; *see Ex parte Weinstein*, 421 S.W.3d 656, 664 (Tex. Crim. App. 2014) ("On post-conviction review of habeas corpus applications, the convicting court is the 'original factfinder,' and this Court is the ultimate factfinder."). The Habeas Corpus statute describes this Court as having the exclusive authority to deny or grant writs of habeas corpus after final felony conviction. TEX. CODE CRIM. PROC. art. 11.07, § 5; *see also Holloway*, 360 S.W.3d at 490 (explaining that Legislature vested "exclusive" jurisdiction in this Court to grant habeas relief on claim of actual innocence). Section five in Article 11.07 states,

> The Court of Criminal Appeals may deny relief upon the findings and conclusions of the hearing judge without docketing the cause, or may direct that the cause be docketed and heard as though originally presented to said court or as an appeal. Upon reviewing the record the court shall enter its judgment remanding the applicant to custody or ordering his release, as the law and facts may justify. The mandate of the court shall issue to the court issuing the writ, as in other criminal cases. *After conviction the procedure outlined in this Act shall be exclusive and any other proceeding shall be void and of no force and effect in discharging the prisoner*.

TEX. CODE CRIM. PROC. art. 11.07, § 5 (emphasis added). This Court has always assiduously guarded its exclusive jurisdiction to grant post-conviction habeas corpus relief in felony cases. *Holloway*, 360 S.W.3d at 490. The question, then, is whether permitting an appeal under Chapter 64 would interfere with this Court's exclusive jurisdiction to grant habeas relief or would otherwise be prohibited by the Texas Constitution as an advisory-only opinion.

**B. Appeal of Finding Under Chapter 64 Would Not Result in Advisory Opinion**

Having determined that a convicted person may obtain post-conviction DNA testing under Chapter 64 without regard to whether he has or will file an application for a writ of habeas corpus, I conclude that the Legislature created the right of appeal under Chapter 64 for the purpose of subjecting a convicting court's actions to appellate scrutiny to ensure and preserve the integrity of the provisions in the statute. *See* TEX. CODE CRIM. PROC. arts. 64.03, 64.04. As such, any opinion from the court of appeals addressing whether the trial court made a proper finding under Article 64.04 does not constitute a prohibited advisory opinion.

"It is well-established that this Court is without constitutional or statutory authority to . . . render advisory opinions." *Ex parte Ruiz*, 750 S.W.2d 217, 218 (Tex. Crim. App. 1988); *see also Armstrong v. State*, 805 S.W.2d 791, 794 (Tex. Crim. App. 1991) ("This Court and the Court of Appeals are without authority to render advisory opinions.").[10] "'Judicial power' is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for a decision." *Garrett v. State*, 749 S.W.2d 784, 803 (Tex. Crim. App. 1986) (opinion on reh'g) (citing *Morrow v. Corbin*, 122 Tex. 553, 558, 62 S.W.2d 641, 644 (Tex. 1933)). An advisory opinion is one which "adjudicates nothing and is binding on no one." *Douglas Oil Co. v. State*, 81 S.W.2d 1064, 1077 (Tex. Civ. App.—Austin 1935). Stated differently, an "advisory opinion results

---

[10] *See also Correa v. First Court of Appeals*, 795 S.W.2d 704, 705 (Tex. 1990) (observing that "judicial power does not embrace the giving of advisory opinions," and stating that it is "axiomatic that appellate courts do not decide cases in which no controversy exists between the parties") (citations omitted).

when a court attempts to decide an issue that does not arise from an actual controversy capable of final adjudication[.]" *Garrett*, 749 S.W.2d at 803. Given an appellate court's lack of constitutional authority to render advisory opinions, it follows that the Legislature is powerless to grant that power to the courts by statute. *See Public Utility Com'n of Texas v. J.M. Huber Corp.*, 650 S.W.2d 951, 954 (Tex. App.—Austin 1983) (reasoning that, because issuing advisory opinion is "beyond the constitutional power" of a court, the "Legislature is powerless to authorize" court to render advisory opinion pursuant to statutory grant of jurisdiction); *see also Morrow*, 62 S.W.2d at 644-45 (Legislature cannot statutorily authorize appellate court to render advisory opinions).

Although it is true that a trial court cannot grant post-conviction relief under Chapter 64, it does not necessarily follow that any opinion by a court of appeals reviewing a trial court's finding under Article 64.04 would be advisory only. I conclude that there are three reasons why, without the appellate review provided for in Chapter 64, a trial court's determinations under the DNA statute might never be reviewed for accuracy by an appellate court even if the convicted person were to file an application for a writ of habeas corpus.

First, as detailed above, the Legislature intended for the parties to have a right to appeal the convicting court's findings under Chapter 64 and, specifically, to permit the convicted person or the State to challenge the sufficiency of the evidence to support the trial court's findings under a reasonable-probability standard. In addressing the former version of the Chapter 64 provision providing a right of appeal, this Court explained that the

Legislature intended to "'give convicted people full access to the courts' and to 'provide a check on individual courts' decisions.'" *Kutzner*, 75 S.W.3d at 433-35. In reviewing the convicting court's decision, the appellate court's opinion and judgment, whether by affirming or reversing the findings that had been found favorable or unfavorable by the convicting court, would be binding on the convicting court and the parties and would not, therefore, be advisory only.

As this Court has observed, the standard of proof that applies to an actual-innocence claim raised in a writ application is significantly higher than the standard that applies in a Chapter 64 proceeding. Whereas an applicant seeking relief on the basis of actual innocence must show by clear and convincing evidence that no reasonable juror would have convicted him in light of new evidence of innocence,[11] a trial court's finding under Chapter 64 is subject only to a preponderance-of-the-evidence standard, that is, that there is a reasonable probability of a different outcome had the DNA test results been available at the time of trial.[12] For this reason, it is possible that this Court would deny a convicted person habeas relief due to his failure to establish actual innocence under a clear-and-convincing standard, despite the convicting court's finding that DNA results were favorable to him under a reasonable-probability standard. *See Routier v. State*, 273 S.W.3d 241, 259 n.76 (Tex. Crim. App. 2008) ("Even if the DNA testing to which [Routier] is entitled under the statute does

---

[11]     *See Ex parte Elizondo*, 947 S.W.2d 202, 208-09 (Tex. Crim. App. 1996).

[12]     *See* TEX. CODE CRIM. PROC. art. 64.04.

in fact provide evidence to corroborate her story . . . she may not be entitled to relief by way of habeas corpus because she may well fall short of meeting the onerous standard for proving actual innocence."); *see also Holloway*, 360 S.W.3d at 490 (observing that "[n]ot every favorable finding under Article 64.04 will necessarily lead to post-conviction habeas corpus relief"). Because this Court reviews actual-innocence claims raised on habeas corpus under the clear-and-convincing standard, it is likely that, absent the availability of direct appeal under the DNA statute, there would be no check on the convicting court's finding as to whether the test results are favorable or unfavorable under the statute's lower reasonable-probability standard. *Compare* TEX. CODE CRIM. PROC. art. 11.07, § 3(c), (d), *with id*. art. 64.04. The Legislature's intent to provide convicted individuals with a full and fair opportunity to litigate the matter of DNA testing is evident in the Chapter's requirement that counsel be appointed before the filing of any Chapter 64 motion for testing if the court finds there are "reasonable grounds" for the filing of such a motion.[13] By contrast, applicants for post-conviction writs of habeas corpus in non-capital proceedings may be appointed counsel only after the filing of an application and upon a subsequent determination by the court that

---

[13]     Texas Code of Criminal Procedure Article 64.01 provides,

> A convicted person is entitled to counsel during a proceeding under this chapter. The convicting court shall appoint counsel for the convicted person if the person informs the court that the person wishes to submit a motion under this chapter, the court finds reasonable grounds for a motion to be filed, and the court determines that the person is indigent.

TEX. CODE CRIM. PROC. art. 64.01(c).

there are controverted issues that require resolution through a hearing.[14]

Second, because Chapter 64 provides the sole avenue for obtaining post-conviction DNA testing, proceedings under that Chapter are independent of any application for a writ of habeas corpus that may or may not ever be filed. When the convicting court orders forensic testing under the Habeas Corpus statute, it may not order DNA testing. *See id.* arts. 11.07, § 3(e); 64.03. To obtain post-conviction DNA testing, therefore, it is unnecessary for a convicted person to meet the criteria for obtaining evidence under the Habeas Corpus statute that requires the habeas court to determine whether the underlying facts are controverted, unresolved, and material. *See id.* art. 11.07. Instead, Chapter 64 permits a convicting court to order DNA testing if, among other requirements, identity was or is an issue in the case and the convicted person would not have been convicted if exculpatory results had been obtained through DNA testing. *See id.* art. 64.03 (a). It cannot be rationally said that an appeal under Chapter 64 would infringe upon this Court's exclusive authority to grant relief under the Habeas Corpus statute where there exists no proceeding under the Habeas Corpus statute at the time of a proceeding under Chapter 64. And, given that Chapter 64 is the exclusive vehicle for accessing post-conviction DNA testing, it can hardly be said that the appellate court's review of a finding under the statute is advisory in the sense that it provides no final judgment whatsoever. Because the results of any DNA testing and the trial court's finding under the statute may form the basis for this Court's later consideration

---

[14]     *See* TEX. CODE CRIM. PROC. art. 11.07, § 3(d).

of a post-conviction claim, the appellate court's review of the trial court's finding is a final judgment with significant consequences for the parties. *See Ex parte Gutierrez*, 337 S.W.3d 883, 890 (Tex. Crim. App. 2011) (observing that, although "[e]xculpatory DNA testing results do not, by themselves, result in relief from a conviction or sentence," Chapter 64 is nevertheless a "procedural vehicle for obtaining certain evidence 'which might then be used in a state or federal habeas proceeding'") (quoting *Thacker v. State*, 177 S.W.3d 926, 927 (Tex. Crim. App. 2005)).

Third, even though in deciding whether to grant habeas relief this Court is the ultimate fact finder, that does not mean that a direct appeal of the convicting court's findings of fact would result in an advisory-only opinion. It is true that habeas relief may only be obtained through the Habeas Corpus statute and not through any Chapter 64 proceeding. *See Ex parte Tuley*, 109 S.W.3d 388, 391 (Tex. Crim. App. 2002) ("Chapter 64 provides for forensic DNA testing but does not provide a vehicle for obtaining relief if testing reveals affirmative evidence of innocence. The vehicle for relief after obtaining test results that constitute affirmative evidence of innocence is" filing an application for post-conviction habeas corpus); *Thacker*, 177 S.W.3d at 927. And it is also true that the "evident legislative purpose behind Chapter 64, [] was to provide a convicted person who is eligible under its terms with an avenue for obtaining post-conviction forensic DNA testing." *Holloway*, 360 S.W.3d at 490; *see also Ex parte Baker*, 185 S.W.3d 895, 896 (Tex. Crim. App. 2006).

Although the appellate court's opinion upholding or reversing the trial court's

favorable or unfavorable finding would not directly result in any immediate relief from a conviction, the appellate court's judgment would bind the trial court and the parties to those findings and cannot, therefore, be fairly characterized as binding no one or adjudicating nothing.[15]   Under these circumstances, there is nothing "speculative, hypothetical, or contingent" about the dispute between the parties.  *See Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1988) (describing prohibited advisory opinion as giving advice on "speculative, hypothetical, or contingent situations").  Nor can the relationship between the parties fairly be described as one that is lacking in a live controversy.  *See City of Alamo v. Montes*, 934 S.W.2d 85, 85 (Tex. 1996) (holding that, because "no live controversy" existed between the parties in wrongful-termination suit following plaintiff's resignation from her position, any opinion Court might issue would be "strictly advisory").  On habeas review following a direct appeal, this Court would be reviewing the trial court's fact findings as those findings appear after the appellate court's judgment affirming or reversing the findings. The appellate court's judgment, therefore, would bind the convicting court and parties as to those findings that, as explained below, are ordinarily deferred to by this Court.

On habeas, this Court, as the ultimate fact finder, may exercise its authority to make

---

[15]      *See Heckman v. Williamson Cty*, 369 S.W.3d 137, 147 (Tex. 2012) (describing inquiry into whether Court's exercise of jurisdiction would result in advisory opinion as being "whether there exists a live, non-abstract question of law that, if decided, would have a binding effect on the parties"); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444-46 (Tex. 1993) (advisory opinion is one that, rather than remedying an actual or imminent harm, decides abstract questions of law without binding the parties).

contrary or alternative findings and conclusions and is not obligated to adopt the trial court's fact findings. *See Weinstein*, 421 S.W.3d at 664 ("When our independent review of the record reveals that the trial judge's findings and conclusions are not supported by the record, we may exercise our authority to make contrary or alternative findings and conclusions."); *Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008). As a practical matter, however, this Court ordinarily affords great deference to the trial court's findings and conclusions in a habeas proceeding. *Ex parte Flores*, 387 S.W.3d 626, 634–35 (Tex. Crim. App. 2012).[16] The practical impact of the direct appeal of the DNA results would be that this Court would ordinarily defer to the convicting court's findings interpreting those results, at least to the extent that the findings would show the test results as being either favorable or unfavorable by a preponderance of the evidence.

---

[16] As this Court noted in *Ex parte Gutierrez*, when reviewing a convicting court's Chapter 64 rulings on direct appeal, an appellate court usually gives "almost total deference to the [] court's determination of historical fact issues and application-of-law-to-fact issues that turn on credibility or demeanor." *Ex parte Gutierrez*, 337 S.W.3d 883, 895 n.34 (Tex. Crim. App. 2011). But an appellate court reviews de novo all other application-of-law-to-fact questions. *Id.*; *see also Johnson v. State*, 183 S.W.3d 515, 519 (Tex. App.—Houston [14th Dist.] 2006). This Court has observed that the trial court's ultimate finding as to whether DNA test results are favorable or unfavorable is a legal determination that calls for de novo appellate review. *See Johnson*, 183 S.W.3d at 520 ("Although there may exist subsidiary fact issues that are reviewed deferentially, the ultimate question of whether a reasonable probability exists that exculpatory DNA tests would prove innocence is an application-of-law-to-fact question that does not turn on credibility and demeanor and therefore is reviewed de novo."); *see also Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). Because the ultimate question of whether there is a reasonable probability that exculpatory DNA tests would be favorable to a convicted person would likely be reviewed de novo on direct appeal, as a practical matter, even though the legal standard on habeas is different from the one on direct appeal, there would likely be no difference in this Court's analysis on habeas review as compared to direct-appeal review with respect to the determination that the DNA results are not favorable to the convicted person or are favorable by a preponderance of the evidence.

Despite the three reasons why an appellate court's judgment would not be advisory in this case, in *Holloway*, this Court held that the court of appeals "erred to address the State's challenge to the trial court's Article 64.04 finding." *Holloway*, 360 S.W.3d at 490. It explained that,

> Because Article 64.04 does not itself provide [Holloway] with any remedy, the court of appeals's opinion with respect to the sufficiency of the evidence to support the trial court's favorable Article 64.04 finding was advisory in nature. Resolution of such a question should await such time as an applicant may seek post-conviction habeas corpus relief.

*Id.* Because this Court in *Holloway* failed to fully consider the relationship between Chapter 64 and the Habeas Corpus statute, this Court mistakenly determined that an appellate court's judgment would be advisory. *See id.* I, therefore, agree with the majority opinion's overruling of that aspect of *Holloway*.

I further agree with the opinion by the court of appeals below that *Holloway* is not distinguishable merely because that decision was based on a review of a State's appeal of a finding favorable to a convicted person as compared to this appeal by the convicted person who is challenging a finding unfavorable to him. It would be illogical to carve out that type of distinction between an appeal of a favorable finding as compared to an appeal of an unfavorable finding. Both parties may have justifiable reasons for wishing to appeal the trial court's findings under the statute, and the statute does not yield absurd results in permitting both parties to appeal. Moreover, the statutory language draws no distinction between favorable or unfavorable findings, nor does it carve out different rules of appealability

depending on whether the appealing party is the State or the convicted person. In the absence of any statutory indication or an extra-textual source to suggest that the Legislature would have intended to create these kinds of distinctions, this Court should treat all findings under the statute in the same manner, that is, as being appealable.

Although a convicting court may not grant habeas relief under it, Chapter 64 provides an independent post-conviction proceeding with different requirements from the Habeas Corpus statute. Appellate review of a trial court's finding under Chapter 64 constitutes a final adjudication of a live controversy between the parties with respect to the issue of DNA testing and the meaning of any test results under a preponderance-of-the-evidence standard. As such, the Legislature's decision to permit parties a right of appeal under Chapter 64 to ensure its integrity cannot be characterized as resulting in a prohibited advisory opinion.

### III. Conclusion

I respectfully concur in the majority opinion's judgment reversing the court of appeals's dismissal of appellant's complaint and remanding the case for consideration of appellant's complaint under the DNA statute on the merits.

Filed: May 7, 2014

Publish