**Opinion issued July 31, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00169-CR

————————————

**BRYAN DALE MANZELLA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1349410**

---

### MEMORANDUM OPINION

Appellant Bryan Dale Manzella pleaded guilty, without an agreed recommendation as to punishment, to the felony offense of aggravated robbery with a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2013).

After a presentence investigation and hearing, the trial court sentenced Manzella to five years in prison. On appeal, he raises a single issue challenging the trial court's failure to hold a hearing on his motion for new trial.

We affirm.

## Background

Bryan Dale Manzella attempted to take a large television from a discount department store, and he threatened the store's employees with a box-cutting knife when they stopped him near the exit. Manzella fled without the television, and he was later arrested and charged with aggravated robbery. He pleaded guilty without an agreed recommendation as to punishment and signed, and he initialed the typical paperwork associated with a plea agreement.

At the plea hearing, the trial court asked him a series of questions before accepting his plea of guilty. Manzella testified that he understood the proceedings in his case and that he had confessed to aggravated robbery; he was satisfied with his lawyer's work; he knew there was no plea bargain; and he was waiving his right to a jury trial. He further testified that no person had exercised force, threatened him, or made promises to induce him to enter a plea. He answered "yes" when asked if he was entering his plea freely and voluntarily. The court accepted his guilty plea.

Almost three months later, the court held a hearing to determine punishment. The presentence investigation report was admitted into evidence. The report included a statement from Manzella in which he stated that he was experiencing financial troubles and tried to steal the television. He denied having a knife or threatening to kill anyone. The report also revealed that Manzella had a five-year-old prior conviction for criminal trespass and that he had been charged with possession of a controlled substance and evading arrest six months after the aggravated robbery. Although the possession of a controlled substance case had been dismissed, the PSI showed that he had been sentenced to 14 days in jail for evasion.

The PSI also summarized Manzella's social history, which showed that he had a three-year-old daughter. The report described his educational history as follows: "The defendant stated he completed the 8th grade via home school. The defendant stated he was homeschooled because his stepfather . . . travelled around the United States. He also stated he stopped studying, started working, making money and never had a desire to go back to school." Both Manzella's mother and his ex-wife, who is the mother of his child, wrote character reference letters describing him as hard-working, loving, and helpful to the family. They asked the court to give him another chance. Neither appeared at the hearing: Manzella's ex-

3

wife was at a doctor's appointment with their daughter and his mother was attending to funeral arrangements for her mother.

In addition to the PSI report, the court heard testimony from Manzella. He said that he understood that the court could sentence him within the range of punishment, which was five years to life in prison. He apologized for his actions, expressed a desire to be available as a father to his young daughter, said he "learned [his] lesson," and asked the court for probation. Manzella testified that he had truthfully answered the questions asked by the PSI interviewer, including that he had been homeschooled through the eighth grade. He testified that he never finished high school or sought a GED but he had no physical or mental disability that would prevent him from doing so. He said, "I can read a little bit." Manzella testified that he was seeking probation so that he could care for his daughter and support her financially.

Manzella admitted prior convictions for criminal trespass as a teenager and for evading arrest. As to the charged aggravated robbery, Manzella said that he understood he "must have had a pocket knife" and that his actions were "wrong." He explained that he had fallen upon difficult financial circumstances and was at a "low point," but that he was sorry and wanted another chance to be a "better man."

On cross-examination, Manzella testified that he knew that "aggravated" meant "you have a weapon," and that he pleaded guilty to aggravated robbery. But

he also said that everything he told the PSI interviewer was truthful, and he told that person that he never used a knife. The State asked:

> Q. So, when—you were lying when you talked to her and said you didn't have a knife?
>
> A. Yes, sir.
>
> . . . .
>
> Q. So, what are you telling this Court now today, did you have a knife when you were exiting that Wal-Mart with the 46-inch TV?
>
> A. I do not recall having a knife. I maybe had one in my pocket, but I do not recall waving it around.

The trial court imposed sentence in this case on February 19, 2013. On April 5, 2013, Manzella filed a motion for new trial and requested a hearing. The motion alleged that after the imposition of sentence, his counsel first learned that Manzella could not read and had a learning disability. A psychosocial evaluation was then conducted by Joycelyn Williams, an employee of the Harris County Public Defender's Office. In an affidavit attached to the motion for new trial, Williams averred that she met with Manzella on March 26, 2013 and conducted "a brief interview to ascertain his educational and psychosocial history." She averred that he "stated that he cannot functionally read." She also stated: "During my interview, Mr. Manzella disclosed that he is distressed about what he believes to be misinformation given to him by his trial attorney. He reported that he did not read

5

the documents related to the Pre-Sentencing Investigation because he cannot read. He reported that his attorney did not explain them to him nor provide him copies of the paperwork."

Manzella acknowledged that his motion for new trial was not filed within the 30-day time limit in Texas Rule of Appellate Procedure 21.4. However, he argued that because he sought a new trial under article 40.001 of the Texas Code of Criminal Procedure, which does not specify a filing deadline, the 30-day time limit did not apply. He contended that the 30-day time limit was not jurisdictional and because the record had not been filed in the appellate court, the trial court retained jurisdiction to hold a hearing and rule on his motion. The court denied the motion for new trial on the same day it was filed, without holding a hearing.

On appeal, Manzella argues that the trial court erred by not holding a hearing on his motion for new trial. He again argues that because the Code of Criminal Procedure does not specify a time limit for filing a motion for new trial based on newly discovered evidence, and because the Rules of Appellate Procedure do not include newly discovered evidence as a reason for granting a new trial, the 30-day limit in Rule 21.4 does not apply. In addition, he contends that even if the 30-day time limit did apply, it was not jurisdictional, and because the appellate record had not been filed by April 5, the court had jurisdiction to hear the motion for new trial.

6

## Analysis

A defendant has a right to file a motion for a new trial. *See* TEX. R. APP. P. 21; *Drew v. State*, 743 S.W.2d 207, 223 (Tex. Crim. App. 1987); *Cooks v. State*, 190 S.W.3d 84, 86–87 (Tex. App.—Houston [1st Dist.] 2005), *aff'd*, 240 S.W.3d 906 (Tex. Crim. App. 2007). Rule 21.4 requires that a motion for new trial must be filed within 30 days of the date the judge pronounces sentence in open court. TEX. R. APP. P. 21.4. If the court does not rule on the motion for new trial within 75 days following the pronouncement of sentence in open court, the trial court's authority to grant the motion expires, and it is deemed denied by operation of law. TEX. R. APP. P. 21.8. The Court of Criminal Appeals has held that these deadlines are jurisdictional. *Drew*, 743 S.W.2d at 223; *see also State v. Holloway*, 360 S.W.3d 480, 486 (Tex. Crim. App. 2012) ("When the statutory timetable is not followed . . . 'the trial court lack[s] jurisdiction' to thereafter rule on the merits of the motion for new trial."), *rev'd on other grounds by Whitfield v. State*, 430 S.W.3d 405 (Tex. Crim. App. 2014).

We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion, and we will reverse only if the trial court's decision was clearly wrong and outside the zone of reasonable disagreement. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). The purposes of a hearing on a motion for new trial are (1) to determine whether the cause should be retried and (2) to

7

prepare a record that would enable the defendant to present issues on appeal if the court denies the motion. *Id.* at 338. A criminal defendant does not have an "absolute right" to a hearing on his motion for new trial. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). "But a trial judge abuses his discretion in failing to hold a hearing if the motion and accompanying affidavits (1) raise matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief." *Id.* (citing *Smith*, 286 S.W.3d at 338–39).

To show that reasonable grounds exist, the defendant must support his motion with one or more affidavits that set forth the factual basis for the claim. *Id.*; *see Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). A defendant seeking a new trial based on a claim of newly discovered evidence need not establish a prima facie case for a new trial in order to be entitled to a hearing on the motion. *Wallace*, 106 S.W.3d at 108. However, he must present in his motion and accompanying affidavits factual matters that show he could be entitled to relief under article 40.001 of the Code of Criminal Procedure. *See id.* at 107–08; *see also Hobbs*, 298 S.W.3d at 201–02.

Section 40.001 provides that a "new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX.

CODE CRIM. PROC. ANN. art. 40.001 (West 2013). The Court of Criminal Appeals

has interpreted section 40.001 and held that

> a defendant is entitled to have his motion for new trial granted if (1) the newly discovered evidence was unknown to him at the time of trial; (2) his failure to discover the new evidence was not due to his lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial.

*See Wallace*, 106 S.W.3d at 108 (citing *Keeter v. State*, 74 S.W.3d 31, 36–37 (Tex.

Crim. App. 2002)). A defendant is never entitled to a new trial for the purpose of

obtaining evidence that was known and accessible to him at the time of trial, even

when he has not conveyed knowledge of the evidence to his attorney. *Drew*, 743

S.W.2d at 227 n.14.

In this case, the trial court pronounced sentence in open court on

February 19, 2013. Manzella filed his motion for new trial 45 days later, on April

5. Because the statutory timetable was not followed, the trial court lacked

jurisdiction to grant Manzella's motion for new trial. *See Drew*, 743 S.W.2d at

223; *Perez v. State*, 261 S.W.3d 760, 771 (Tex. App.—Houston [14th Dist.] 2008,

pet. ref'd) (holding that court lacked jurisdiction to rule on motion for new trial

alleging newly discovered evidence because it was filed more than 30 days after

the date sentence was imposed).

Manzella relies on *State v. Moore*, 225 S.W.3d 556 (Tex. Crim. App. 2007), to argue that the time limit for bringing a motion for new trial is not, in fact, jurisdictional. He contends that because the appellate record had not yet been filed, the court retained jurisdiction to rule on his motion for new trial. In *Moore*, the defendant timely filed an original motion for new trial, but filed an amendment to the motion for new trial more than 30 days after the court pronounced sentence. *Moore*, 225 S.W.3d at 557. The Court of Criminal Appeals held that although the time for filing an original motion for new trial was jurisdictional, the limitation on filing an amendment to a timely filed motion for new trial was not. *Id.* at 568. Rather, this limitation was waivable, and absent an objection from the State, the court could consider an untimely amendment to a timely filed motion for new trial if it was filed before the 75-day deadline for the trial court's ruling on the motion. *Id.* at 568–69. The Court noted that this situation was distinguishable from the failure to timely file an original motion for new trial, saying, "This is unlike the situation in *Drew*, in which the failure of the defendant to timely file his original motion for new trial deprived the trial court of the authority to grant a new trial at all, within the seventy-five days or otherwise." *Id.* at 569. Manzella's case is like *Drew* and unlike *Moore*. As in *Drew*, Manzella's failure to timely file an original motion for new trial deprived the court of authority to grant the new trial at all. *See id.*

We hold that the court did not err in denying a hearing and the motion for new trial because it lacked jurisdiction to grant the untimely filed motion. *See Wallace*, 106 S.W.3d at 108. We overrule Manzella's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

11