PD-0037-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/5/2015 10:00:05 AM
Accepted 1/15/2015 4:38:34 PM
ABEL ACOSTA
CLERK

PD-0037-15

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

| | | | |
|---|---|---|---|
| **ROGER EUGENE FAIN** | § | | FILED IN |
| *APPELLANT* | § | | COURT OF CRIMINAL APPEALS |
| | § | | |
| **V.** | § | NO | JANUARY 15, 2015 |
| | § | | |
| **THE STATE OF TEXAS,** | § | | ABEL ACOSTA, CLERK |
| *APPELLEE* | § | | |

*STATE'S PETITION FOR DISCRETIONARY REVIEW OF THE DECISION OF THE COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS IN CAUSE NUMBER 02-13-00366-CR REVERSING THE DECISION TO DENY POST-CONVICTION FORENSIC DNA TESTING IN CAUSE NUMBER 1023944D IN THE 372ND JUDICIAL DISTRICT COURT OF TARRANT COUNTY, TEXAS; THE HONORABLE WAYNE SALVANT, JUDGE PRESIDING.*

§ § §

## STATE'S PETITION FOR DISCRETIONARY REVIEW

§ § §

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

STEVEN W. CONDER, Assistant
Criminal District Attorney
State Bar No. 04656510
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1687
FAX (817) 884-1672
CCAAppellateAlerts@TarrantCounty.Com

## IDENTITY OF JUDGES, PARTIES AND COUNSELS

Trial Court Judge:  Hon. Scott Wisch, Presiding Judge, 372nd District Court of Tarrant County, Texas

DNA Proceedings Judge:  Hon. Wayne Salvant, Presiding Judge, Criminal District Court No. 2 of Tarrant County, Texas (sitting by assignment)

Parties to the Judgment: Appellant, Roger Eugene Fain, and the State of Texas

Appellant's counsels at trial:
    Hon. J. Warren St. John
    801 Cherry Street, Unit 5
    2020 Burnett Plaza
    Fort Worth, Texas 76102-6883

    Hon. Wes Ball
    4025 Woodland Park Blvd., Suite 100
    Arlington, Texas 76013-4338

Counsels for the State at trial:
    Hon. Joe Shannon Jr., former Criminal District
        Attorney, Tarrant County, Texas
    Hon. Greg Miller, Assistant Criminal District
        Attorney, Tarrant County, Texas
    Hon. Alana Minton, former Assistant Criminal District
        Attorney, Tarrant County, Texas
    401 W. Belknap Street
    Fort Worth, Texas 76196-0201

Appellant's counsel on direct appeal:
    Hon J. Rex Barnett
    105 York Avenue
    Weatherford, Texas 76086

Counsel for the State on direct appeal:
    Hon. Edward L. Wilkinson, Assistant Criminal District
        Attorney, Tarrant County, Texas
    401 W. Belknap St.
    Fort Worth, Texas 76196-0201

Counsel for Appellant on original DNA motion and appeal:
    Hon. Brian K. Walker
    222 W. Exchange Avenue
    Fort Worth, Texas 76164-8142

Counsel for Appellant on subsequent DNA appeal:
    Hon. Barry J. Alford
    1319 Ballinger Street
    Fort Worth, Texas 76102-3431

Counsel for the State on original and subsequent DNA motion
    and appeal:
    Hon. Steven W. Conder, Assistant Criminal District
        Attorney, Tarrant County, Texas
    401 W. Belknap Street
    Fort Worth, Texas 76196-0201

## TABLE OF CONTENTS

IDENTITY OF JUDGES, PARTIES AND COUNSELS ..............i

TABLE OF CONTENTS .....................................iii

TABLE OF AUTHORITIES ..................................v

STATEMENT REGARDING ORAL ARGUMENT .....................1

STATEMENT OF THE CASE .................................1

STATEMENT OF PROCEDURAL HISTORY .......................2

QUESTIONS FOR REVIEW .................................5

ARGUMENT .............................................5

    A.   Standards of Reviewing Subsequent Motions
        for Post-Conviction Forensic DNA Testing .....5

    B.   Deference to Trial Court's Determination
        of Factual and Credibility Issues ...........7

        1.   DNA Results from Oral Swab ..............8

        2.   Cause of Death - Medical Testimony ......10

        3.   Testimony of Danny Smith ...............11

    C.   Determination of Reasonable Probability .....13
        of Innocence

CONCLUSION ...........................................15

PRAYER ...............................................15

CERTIFICATE OF SERVICE ...............................16

CERTIFICATE OF COMPLIANCE ............................16

APPENDIX (Court of Appeals Opinion) ...................A

iv

# INDEX OF AUTHORITIES

CASES

Ex parte Baker,
  185 S.W.3d 894 (Tex. Crim. App. 2006).............5, 6

Ex parte Gutierrez,
  337 S.W.3d 883 (Tex. Crim. App. 2011)...........8, 13

Ex parte Suhre,
  185 S.W.2d 898 (Tex. Crim. App. 2006).............5, 6

Fain v. State,
  2009 WL 2579580 (Tex. App. – Fort Worth 2009,
  pet. refused)......................................2

Fain v. State,
  2012 WL 752652 (Tex. App. -- Fort Worth 2012,
  pet. refused)...................................3, 4

Fain v. State,
  2014 WL 6840282 (Tex. App. --
  Fort Worth 2014)...................5, 9, 10, 11, 12

Geesa v. State,
  820 S.W.2d 154 (Tex. Crim. App. 1991)..............14

Kutzner v. State,
  75 S.W.3d 427 (Tex. Crim. App. 2002)...............13

Rivera v. State,
  89 S.W.3d 55 (Tex. Crim. App. 2002).................8

Skinner v. State,
  122 S.W.3d 808 (Tex. Crim. App. 2003)..............13

Smith v. State,
  165 S.W.3d 361 (Tex. Crim. App. 2005)..............13

Whitfield v. State,
  430 S.W.3d 405 (Tex. Crim. App. 2014)............8, 13

Wyatt v. State,
  23 S.W.3d 18 (Tex. Crim. App. 2000).................12


STATUTES

Tex. Code Crim. Proc. art. 11.07 §4 ....................6

Tex. Code Crim. Proc. art. 11.071 §5 ..................6

Tex. Code Crim. Proc. art. 11.072 §9 ..................6

Tex. Code Crim. Proc. art. 11.073(b)(1)(A) ............7

Tex. Code Crim. Proc. art. 11.073(d)(2) ...............7

Tex. Code Crim. Proc. art. 64.01(b) ...................6


RULES

Tex. R. App. P. 9.4(e) ...............................16

Tex. R. App. P. 9.4(i) ...............................16

Tex. R. App. P. 9.4(i)(1) ............................16

Tex. R. App. P. 66.3(b) ...............................7

Tex. R. App. P. 66.3(c) ............................8, 14

Tex. R. App. P. 66.3(e) ............................8, 14

Tex. R. App. P. 66.3(f) ............................8, 14

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

ROGER EUGENE FAIN                §
    *APPELLANT*                   §
                                  §
V.                                §        NO. _____
                                  §
THE STATE OF TEXAS,               §
    *APPELLEE*                    §


STATE'S PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE COURT OF CRIMINAL APPEALS:


STATEMENT REGARDING ORAL ARGUMENT

The State requests that oral argument be granted because this case involves important questions of State law to be decided.


STATEMENT OF THE CASE

This case addresses whether the appellant is entitled to post-conviction forensic DNA testing of evidence from his capital murder conviction. The trial court denied the appellant's testing request. The Court of Appeals partially reversed the trial court's decision, and ordered

1

that DNA testing be conducted on specific evidence.

STATEMENT OF PROCEDURAL HISTORY

The appellant was convicted of the capital murder of Linda Donahew on December 19, 2007.  See Clerk's Record I:9.  The trial court sentenced him to life imprisonment. See Clerk's Record I:9.

The Second Court of Appeals affirmed the appellant's conviction; specifically finding that the evidence was legally and factually sufficient to show:

- The appellant killed Linda Donahew;
- Her death was caused intentionally; and
- Her death occurred in the course of the appellant committing or attempting to commit aggravated sexual assault.

See Fain v. State, 2009 WL 2579580, pages 1-5 (Tex. App. – Fort Worth 2009, pet. refused).

The appellant's original motion for post-conviction forensic DNA testing was denied by the trial court on September 1, 2010.  See DNA Clerk's Record I:11-12.  The trial court specifically found that he did not meet the

2

requirements of either article 64.01 or article 64.03 of the Code of Criminal Procedure for post-conviction forensic DNA testing because:

- He failed to show that there exists a reasonable probability that the DNA testing would prove his innocence because it is extremely unlikely that any new DNA re-testing technique would provide a more accurate or probative result.
- He failed to show that there exists a reasonable probability that further DNA testing would prove his innocence because of the Texas Department of Public Safety's Combined DNA Index System ("CODIS") discovery that Defendant's DNA is a positive match with semen found in the victim's mouth at the time of her murder.
- A subsequent DNA sample taken from the defendant matched the semen found in the victim's mouth at the time of her murder with a 99.999% population exclusion.

See Fain v. State, No. 1023944D (Memorandum and Order - September 1, 2010).

The Second Court of Appeals affirmed the trial court's decision to deny post-conviction DNA testing because the appellant had failed to show that favorable DNA results would have resulted in him not being convicted. See Fain v. State, 2012 WL 752652, page 19 (Tex. App. -- Fort Worth

3

2012, pet. refused) (not designated for publication).[1]

The appellant filed a second motion for post-conviction forensic DNA testing on April 17, 2013. See DNA Clerk's Record I:15-19. On June 6, 2013, the trial court denied this motion because the appellant did not meet the requirements of either article 64.01 or article 64.03 of the Code of Criminal Procedure for post-conviction forensic DNA testing. See DNA Clerk's Record I:25; 2nd Supplemental DNA Clerk's Record I:24-27.

On December 4, 2014, in a 2-1 decision, the Court of Appeals:

- affirmed the trial court's order denying testing on the blood found on the Bic pen and in the closet;
- reversed the trial court's order denying testing on the hairs found in Ms. Donahew's hands, the pubic hair, the blood found on the bathroom faucet, Ms. Donahew's fingernail clippings, the male DNA discovered on the bra

---

[1] The Court of Appeals also found that the appellant was not entitled to post-conviction DNA testing under the former "no fault" provision. See Fain v. State, 2012 WL 752652, pages 7-9. The Court of Appeals addressed this provision despite the fact that the trial court did not consider it in denying the appellant's original DNA testing request. See Fain v. State, No. 1023944D (Memorandum and Order – September 1, 2010).

4

and shirt Ms. Donahew wore on the day of her death, and the knife.

See Fain v. State, 2014 WL 6840282, page 18 (Tex. App. – – Fort Worth 2014).

## QUESTIONS FOR REVIEW

1.  Whether this Court should establish standards for subsequent requests for post-conviction forensic DNA testing?

2.  Whether the Court of Appeals gave proper deference to the trial court's determination of factual issues and application-of-law-to-fact issues that turn on credibility or demeanor?

3.  Whether the Court of Appeals properly determined that there exists a reasonable probability that exculpatory DNA testing of the evidence for which the appellant seeks testing would prove his innocence?

## ARGUMENT

**A. Standards of Reviewing Subsequent Motions for Post-Conviction Forensic DNA Testing**

This Court has held that Chapter 64 does not prohibit a second or successive motion for post-conviction forensic DNA testing. Ex parte Baker, 185 S.W.3d 894, 897-98 (Tex. Crim. App. 2006); Ex parte Suhre, 185 S.W.2d 898, 899 (Tex.

5

Crim. App. 2006); Tex. Code Crim. Proc. art. 64.01(b). The Court, however, did not articulate any standards by which the trial courts should evaluate successive DNA motions. See Ex parte Baker, 185 S.W.3d at 897-98; Ex parte Suhre, 185 S.W.3d at 899. This Court should take the opportunity to determine what standards, if any, a defendant should meet before re-filing requests to test evidence already rejected by the convicting trial court.

All other means of post-conviction relief have a standard for considering successive requests. See Tex. Code Crim. Proc. art. 11.07 §4; Tex. Code Crim. Proc. art. 11.071 §5; & Tex. Code Crim. Proc. art. 11.072 §9. With post-conviction DNA motions, there is no mechanism to prevent a defendant from making the same request to the convicting trial court on multiple occasions.[2]

Even article 11.073 places a standard on its use which would limit defendants from re-filing successive requests.

---

2    The State acknowledges that the habeas limitations on successive requests are statutorily imposed and that Chapter 64 does not have similar limitations.

See Tex. Code Crim. Proc. art. 11.073(b)(1)(A). Under article 11.073, a defendant must show scientific unavailability at the time of his prior request. See Tex. Code Crim. Proc. art. 11.073(d)(2). This case's history underscores why this Court should establish some standard for consideration of subsequent requests for post-conviction DNA testing; otherwise, a defendant may take endless "bites at the apple" before he finds a court willing to agree with his request.

Thus, the interests of justice suggest that this Court articulate standards for considering subsequent requests for post-conviction DNA testing. See Tex. R. App. P. 66.3(b).

## B. Deference to Trial Court's Determination of Factual and Credibility Issues

In denying the appellant's DNA testing request, the trial court found and concluded that:

> Given the previously-tested DNA evidence inculpating the petitioner and its high-probative value, it is unlikely that newer testing of this evidence or any other evidence would provide results which would exonerate him.

See DNA Clerk's Record I:25; 2nd Supplemental DNA Clerk's Record I:24-27.

When reviewing Chapter 64 DNA rulings, an appellate court should give the trial court almost total deference to its determination of historical fact issues and (2) application-of-law-to-fact issues that turn on credibility or demeanor. Rivera v. State, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002); Ex parte Gutierrez, 337 S.W.3d 883, 895 n.34 (Tex. Crim. App. 2011); Whitfield v. State, 430 S.W.3d 405, 424 n.16 (Tex. Crim. App. 2014) (Alcala J., concurring). In resolving this case, the Court of Appeals departed from this standard by not affording the convicting trial court deference in its determination of the historical facts and its credibility assessments. See Tex. R. App. P. 66.3(c), 66.3(e) & 66.3(f).

1. DNA Results from Oral Swab:

The Court of Appeals mischaracterized the DNA results of the oral swab recovered from inside Ms. Donahew's mouth.

The Court opined that:

> DNA of both Appellant and an unknown male was found at the scene and inside Donahew's mouth. But there was no way to determine when the DNA was deposited or in what order it was deposited.

See Fain v. State, 2014 WL 6840282, page 13.

Contrary to the Court's characterization, the DNA analyst (Connie Patton) did not find a second male profile on the oral swab; rather, her analysis revealed three minor alleles which did not originate from either the appellant or Ms. Donahew. See 2nd Supplemental DNA Clerk's Record I:22-23; Trial Reporter's Record X:217-18. Ms. Patton observed that it was possible that the appellant merely transferred foreign DNA already present on his body into Ms. Donahew's mouth. See Trial R.R. X:237-38. By finding this evidence most probative of guilt, the trial court treated Ms. Patton's trial testimony as credible and dismissed the presence of minor alleles as establishing multiple depositors. See DNA Clerk's Record I:25; 2nd Supp. I:24-27.

The Court of Appeals' "multiple depositors on the oral

9

swab" theory has no factual basis and does not give any deference to the trial court's determination that the oral swab evidence was highly probative of the applicant's guilt.

2.   Cause of Death – Medical Testimony

The Court of Appeals mischaracterizes the medical testimony regarding Ms. Donahew's stabbing.  The Court stated that:

> The medical testimony, however, described a fatal
> stab wound inflicted on Donahew while she was still
> alive.

See Fain v. State, 2014 WL 6840282, page 13.  Dr. Nizam Peerwani (the medical examiner) actually testified that, based on Ms. Donahew's facial plethora petechiae, her death-causing strangulation occurred before she was stabbed.  See Trial Reporter's Record VIII:73-74.

The Court further implies that Ms. Donahew's strangulation might even have occurred separately from her stabbing:

> Although Donahew was strangled and strangulation

10

was a cause of death, Dr. Peerwani testified that the knife wound to Donahew's neck was intended to cause her death.

See Fain v. State, 2014 WL 6840282, page 16. Dr. Peerwani testified that, while the strangulation caused Ms. Donahew's death, the stabbing occurred at or near the time of her death. See Trial R.R. VIII:73-74.

The Court of Appeals gave no deference to the prior factual determinations in analyzing the medical testimony.

3. Testimony of Danny Smith:

Witness Danny Smith was housed in the Eastham Unit with the appellant. See Trial Reporter's Record IX:104. Mr. Smith testified that he had conversations with the appellant who admitted that:

- He strangled Linda Donahew while having consensual sexual relations;
- He killed Ms. Donahew to stop her from going to the authorities; and
- He drove an old Ford pickup truck at the time of Ms. Donahew's death.

See Trial Reporter's Record IX:108-09. Mr. Smith's trial testimony was admitted without objection by the appellant.

11

<u>See</u> Trial Reporter's Record IX:108-09.

The Court of Appeals dismisses Mr. Smith's testimony as "purchased and suspect". <u>See</u> Fain v. State, 2014 WL 6840282, page 13. Such a wholesale dismissal of a witness' testimony is outside the purview of an appellate court. <u>See</u> Wyatt v. State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (any discrepancies or qualms about a witness' truthfulness is for the fact-finder to resolve in its role as exclusive judge of the credibility of witnesses and the weight to be given their testimony). The Court showed no deference to the credibility determinations made by the fact-finders in this case.[3]

In sum, the Court of Appeals did not apply the proper standard of review because it gave no deference to trial court's factual or credibility determinations.

---

[3] Moreover, the Court of Appeals also uses its mischaracterization of the medical testimony to justify dismissing Mr. Smith's testimony. <u>See</u> Fain v. State, 2014 WL 6840282, pages 13-14.

12

## C. Determination of Reasonable Probability of Innocence

In denying the appellant's DNA testing request, the trial court found and concluded that:

> Given the previously-tested DNA evidence inculpating the petitioner and its high-probative value, it is unlikely that newer testing of this evidence or any other evidence would provide results which would exonerate him.

See DNA Clerk's Record I:25; 2nd Supplemental DNA Clerk's Record I:24-27.

When reviewing Chapter 64 DNA rulings, an appellate court reviews *de novo* all other application-of-law-to-fact questions that do not turn on credibility. Ex parte Gutierrez, 337 S.W.3d at 895; Whitfield v. State, 430 S.W.3d at 424. To be entitled to post-conviction DNA testing, a defendant must establish by a preponderance of the evidence that there exists a reasonable probability that exculpatory DNA testing of the evidence for which he seeks testing would prove his innocence. Smith v. State, 165 S.W.3d 361, 363-64 (Tex. Crim. App. 2005); Skinner v. State, 122 S.W.3d 808, 811 (Tex. Crim. App. 2003); Kutzner v. State, 75 S.W.3d 427, 439 (Tex. Crim. App. 2002).

13

Two significant facts demonstrating the appellant's guilt were that:

- His DNA profile was found in the sperm sample recovered from Ms. Donahew's mouth; and
- He confessed to Mr. Smith that he killed Ms. Donahew.

By purposefully discounting the evidence favorable to the State, the Court of Appeals removed the burden of proof from the appellant and placed it on the State. Thus, the Court of Appeals departed from the standards adopted by this Court in resolving the "reasonable probability of innocence" prong. <u>See</u> Tex. R. App. P. 66.3(c), 66.3(e) & 66.3(f).

The Court of Appeals' review actually reads like a resurrection of the long-rejected alternate reasonable hypothesis construct. <u>See</u> Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991). No authority addressing "reasonable probability of innocence" under article 64.03 requires that the State disprove every possible alternate theory before a convicting trial court can reject a request for post-conviction DNA testing.

In sum, the Court of Appeals misapplied the standard

14

of review for considering whether there exists a reasonable probability that post-conviction DNA testing would prove the appellant's innocence.

## CONCLUSION

This Court should provide standards for considering subsequent requests for post-conviction DNA testing. Additionally, the Court of Appeals misapplied the proper standard of review and acted as a "super-factfinder" in reversing the trial court's decision to deny post-conviction DNA testing.

## PRAYER

The State prays that this Court grant review in this cause, reverse the decision of the Court of Appeals, and affirm the trial court's decision.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

15

/s/ Steven W. Conder
STEVEN W. CONDER, Assistant
Criminal District Attorney
State Bar No. 04656510
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1687
FAX (817) 884-1672
CCAAppellateAlerts@TarrantCounty.Com

## CERTIFICATE OF SERVICE

A true copy of the State's brief have been electronically served on opposing counsel, the Hon. Barry J. Alford, 1319 Ballinger Street, Fort Worth, Texas 76102-3431 (barryalford13@gmail.com), on this, the 5th day of January, 2015.

/s/ Steven W. Conder
STEVEN W. CONDER

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes, and with the word-count

16

limitations of Tex. R. App. P. 9.4(i) because it contains approximately 2287 words, excluding those parts exempted by Tex. R. App. P. 9.4(i)(1), as computed by Microsoft Office Word 2010 – the computer program used to prepare the document.

/s/ Steven W. Conder
STEVEN W. CONDER

c18.fain roger eugene.pdr/state

17





# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00366-CR

ROGER EUGENE FAIN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1023944D

----------

## MEMORANDUM OPINION[1]

----------

In one point, Appellant Roger Eugene Fain appeals the trial court's order denying his second motion for forensic DNA testing of evidence related to his capital murder conviction.[2]  Because we conclude that the trial court erred by

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Code Crim. Proc. Ann. art. 64.05 (West 2006); Tex. Penal Code Ann. § 19.03(a)(2) (West Supp. 2014).

denying the motion, we reverse the trial court's order and remand this case for a

new hearing.

**Background Facts**

This is not Appellant's first proceeding in this court. In affirming his 2007

conviction and life sentence for capital murder,[3] we provided details related to the

murder of Linda Donahew:

> Bonnie Bishop shared a house with her sister, Donahew. On June 1, 1987, Bishop left work and arrived home at approximately 8:00 p.m. She entered the house to find her sister's nude and blood-covered body lying on the floor in the bedroom closet.
>
> The autopsy revealed that Donahew had died from manual strangulation and that a secondary cause of death was a stab wound to her neck. The postmortem examination also revealed several hairs found clinched in her hands, DNA artifacts in her mouth, and three foreign pubic hairs in the genital area.
>
> Approximately fourteen years later, in August 2001, a DNA sample was taken from Appellant, who was incarcerated for an unrelated crime. The sample was entered into the Combined DNA Index System (CODIS) of the Texas Department of Public Safety (DPS). Four years later, in October 2005, the cold case of Donahew's murder was reopened, and the DNA samples acquired during the examination of her body were uploaded into CODIS and were found to match the DNA profile of Appellant.
>
> . . . At trial, the State relied on the DNA evidence, testimony from a witness who saw a truck similar to that owned by Appellant at the time of the offense parked in front of Donahew's house at the time of the offense, the testimony of an inmate, Danny Smith, who claimed that Appellant had confessed to him in jail, testimony that

---

[3]*Fain v. State*, No. 02-08-00002-CR, 2009 WL 2579580, at *1, 9 (Tex. App.—Fort Worth Aug. 20, 2009, pet ref'd) (mem. op., not designed for publication).

Donahew had previously been seen in the company of Appellant, and testimony that on the day of her death she had said that she was worried about meeting someone who wanted to look at a truck she was selling.

Dr. Nizam Peerwani, the medical examiner who performed the autopsy and forensic examination of Donahew's body, testified that he took oral swabs from her mouth and that they contained DNA material. . . . Kelly Solis testified that she was a DNA analyst for the DPS CODIS lab . . . . She testified that the DNA samples from the oral swabs taken by Dr. Peerwani matched Appellant's DNA profile.

Constance Patton testified that she was a senior forensic biologist and DNA technical leader for the medical examiner's office crime laboratory in Fort Worth. She testified that she had examined the samples from the oral swabs taken by Dr. Peerwani and that the results of her examination showed that the samples contained DNA material consistent with the DNA of Donahew and a mixture containing one DNA sample consistent with that of Appellant and a sample of male DNA foreign to both Donahew and Appellant. Patton testified that it could not be determined whether Appellant's DNA had been contributed before or after the other male DNA or how long it had been present. She also testified that she had tested a portion of a towel taken from Donahew's house. The towel tested presumptively for blood and also for a mixture of DNA from Donahew. She testified that a sample of male DNA from Ronald Nix, a boyfriend of Donahew, could not be excluded from matching the sample on the towel. Patton also found a sperm stain on the comforter from Donahew's bed, the DNA profile of which also matched Nix's sample.

. . . .

Detective Jim Ford testified that he had requested DNA testing of [an] unknown pubic hair found on Donahew's body. The test showed that Nix could not be eliminated as a contributor of the hair.

. . . .

Ernest Fain, Appellant's brother, testified that in 1987, Appellant drove a mid–1970s white Ford pickup truck and that the truck had a black tool box and PVC piping attached to its bed. . . .

3

Sheila Nelson testified that she lived next door to Donahew in 1987 . . . [and] [o]n the day of Donahew's murder, Nelson and her husband left the house at approximately 5:15 p.m. to take a walk. They noticed a white Ford pickup truck parked on the street . . . between [Nelson's and Donahew's houses]. She testified that it was an older model truck with a tool box. The truck was still there when she returned from her walk about fifteen to twenty minutes later. . . .

. . . .

Michael Higham testified that in the late spring and summer of 1987, he was the detail shop manager of Pleasant Ridge Car Wash in Arlington. In the late spring or early summer of 1987, Donahew took her car in for detailing. When he had finished with the car, he went to the horse stables to pick her up and take her back to her car. She was with a man whom he identified as Appellant. . . .

. . . .

Danny Smith, a sixty-three-year-old inmate who at the time of trial was serving forty-five years' confinement for involuntary manslaughter, . . . testified that he knew Appellant from having been in prison with him. . . . Appellant told Smith that he had been having sex with Donahew and had unintentionally strangled her during sex. . . .

. . . .

. . . Smith testified that Appellant had shared news articles from newspapers and from the internet about the Donahew murder case.

Ronald Nix testified that he had dated Donahew from February 1987 until her death. . . . He testified that shortly before her death, he had been at a club with Donahew and had seen her talking with a man whom Nix identified as Appellant.[4]

In the appeal from his conviction, we rejected Appellant's argument that

the evidence was legally and factually insufficient to show that he committed the

---

[4]*Id.* at *1–4 (internal quotation marks omitted).

murder, although we noted that the evidence was "equivocal."[5]   Indeed, the

evidence against Appellant was far from overwhelming.  As we noted,

> Smith admitted that he was worried about the possibility of dying in prison and that he had lost various appeals in his case, up to and including his appeals in federal court and the United States Supreme Court.  He also admitted that he had made contact with the Tarrant County District Attorney's office regarding testifying against Appellant, calling himself a "crucial State's witness" and offering his testimony in exchange for benefits to him, including help with his sentence.  He testified that he had wanted a guarantee in writing of help "in this and possibly other offenses currently unsolved."  He also admitted to having offered himself as a State's witness in other cases.  In exchange, he had asked to be removed from his current prison unit and placed in a unit with better medical facilities.  He also admitted that he had, in fact, been moved to a geriatric medical facility in the Terrell Unit.

> Smith testified that when he was interviewed by Appellant's trial counsel, he had told them that he did not know why he had been brought to Tarrant County and that he did not have any information that would help the State regarding Appellant's alleged killing of Donahew.  Smith also denied knowing that one of Appellant's attorneys was, in fact, an attorney.  Later, however, Smith admitted that he had previously written to the same attorney requesting help in his case.[6]

Additionally,

> Donald Thweatt testified that in 1987 he owned two horses, which he stabled at Braddock's Stables in Arlington.  Around June 1, 1987, he saw Donahew, who also kept horses there, at the stables.  She was not driving her usual vehicle but was with a male in a 1970s white Ford pickup.  He described the man as being about six feet tall and weighing around 180 pounds with shoulder-length hair and glasses.  On cross examination, Thweatt said that Donahew and the

---

[5]*Id.* at *5.

[6]*Id.* at *4.

man were unloading clear plastic bags of cedar shavings.  He also described the man as having an untrimmed and unkempt beard.  Thweatt testified that he could not remember the exact date, but that it was "sometime in the late spring of 1987."

. . . .

Ronald Nix testified that . . . [i]n May 1987, he and Donahew had taken a vacation together to Mexico.  A picture taken at the time of the trip showed that in May 1987, Nix had dark, curly hair and wore a full beard.[7]

Other testimony noted in our original opinion included the following:

Luke Kortegast, who testified by videotaped deposition because he was on active duty in the military and scheduled to be deployed overseas, testified that at the time of the offense, when he was seventeen years old, he lived with his parents next door to Donahew, whom he described as attractive.  He often saw a white pickup truck parked at Donahew's house from the winter of 1986 through the early spring of 1987.  He described the truck as a mid-to-late 1970s white pickup truck with large tires and a raised suspension.  He thought that it was a four-wheel drive truck and in "pretty good shape."  He testified that on occasion the truck had been at the house overnight.  He did not remember the truck[']s having a toolbox or a PVC pipe attached to its bed.

He described the driver as a white male, approximately six feet tall and weighing between 175 and 200 pounds, with long dark brown hair and a beard that ranged from a few days' stubble to a full beard.  Kortegast testified that the man usually wore a baseball cap and aviator-type sunglasses.

At some point in the spring, Kortegast stopped seeing the truck at Donahew's house, but he testified that he did see it parked in the driveway one more time on the day of Donahew's murder.  He testified that the truck was in the driveway at approximately 10:30 a.m. the day of her death.  He was unable to identify Appellant as the driver of the truck, either at trial or from a photo spread.  Kortegast also testified that Donahew had frequent visitors in

---

[7]*Id.* at *3–4.

6

addition to the bearded man.

> . . . Appellant's brother [Ernest], . . . described [Appellant's truck] as a standard truck, not a raised four-wheel-drive vehicle. He also testified that he had seen Appellant approximately a dozen times during 1986 and 1987 and that he had never known Appellant to have a beard. He also testified that the pickup was "very beat up."

> . . . . [After their walk, Nelson] and her husband went out to eat, and when they returned at about 8:30 p.m., the pickup was gone. Nelson testified that Donahew had had a lot of friends and quite a bit of company.

> Bishop, Donahew's sister, testified that in November 2005 she had been shown a photo spread containing Appellant's photograph. After looking at it for approximately twenty minutes, she had told Detective Ford that she did not recognize anyone in it. After the photo array was shown to her other sister, however, Bishop asked to see it again, and she then told Ford that it looked like someone who had come up to Donahew in a restaurant and bar called John B's. Bishop also testified that Donahew had broken up with Nix some time before her death.[8]

Although Higham identified Appellant as the man he saw with Donahew at the stables, he told Arlington police officer William Zimmerman that he had talked to Mrs. Braddock for a few minutes "until Donahew arrived with a white male who was driving a pale blue 1973 or 1974 pickup truck with wide spoked wheels."[9]

The only evidence that Appellant strangled Donahew is Smith's testimony of Appellant's purported confession of consensual sexual activity with consensual autoerotic choking that accidentally resulted in strangling. But there is no

---

[8]*Id.* at *2–3.

[9]*Id.* at *4.

7

evidence of Appellant's using a knife, although Donahew was also fatally stabbed. Additionally, we noted in our original opinion,

> Linda Reed testified that Donahew was a close friend and had come to her house for a visit around 11:00 a.m. on the day she died. Donahew left around 3:00 p.m. that afternoon, and as she left, she told Reed that she was nervous because later she was going to show her pickup truck to a man she had met at the stables and that he might buy it from her. Reed testified that Donahew had a bad feeling about the meeting.[10]

Following our opinion affirming the conviction, Appellant filed his first motion for postconviction forensic DNA testing, and in September 2010, the trial court denied that motion.[11] In 2012, we affirmed the order denying Appellant's first motion.[12] We explained, in part, that the trial court did not err by denying Appellant's motion to test several items—including six head hairs clenched in Donahew's hands, loose pubic hairs combed from Donahew's pubic hair, blood on a water knob of a bathroom faucet, Donahew's fingernail clippings, male DNA discovered on the bra and shirt Donahew wore on the day of her death, and a knife, because as to those items, Appellant failed to establish "no fault" in the items not being previously tested.[13]

---

[10]*Id.* at *8.

[11]*Fain v. State*, No. 02-10-00412-CR, 2012 WL 752652, at *1 (Tex. App.—Fort Worth Mar. 8, 2012, pet. ref'd) (*Fain II*).

[12]*Id.* at *21.

[13]*Id.* at *5–18.

8

In April 2013, Appellant acting *pro se*, filed his second motion for post-conviction DNA testing of items that "ha[d] not previously been tested." Specifically, he asked for testing of, among other items, hairs from Donahew's hands, from a comforter, and from a shirt; pubic hairs from the autopsy; fibers from Donahew's body; blood samples from carpet, from a faucet, and from a ball point pen; and a comb from a bathroom floor. Appellant contended, "There is untested biological material in the State's possession that may well contain the identity of the person(s) that are responsible, but has never been subjected to DNA testing." He also averred, "If DNA other than [Appellant's] is detected, [that] could corroborate the theory of someone else[']s involvement in this case . . . ."

The State confirmed that "evidence exists which may contain biological material" but contended that probative DNA evidence found on Donahew inculpated Appellant. After the State responded to Appellant's second motion, in June 2013, the trial court denied the second motion because Appellant did not meet the requirements of either article 64.01 or article 64.03 of the code of criminal procedure.[14] The trial court adopted the State's proposed findings of fact and conclusions of law, as follows:

---

[14]*See* Tex. Code Crim. Proc. Ann. arts. 64.01, 64.03 (West Supp. 2014).

## FINDINGS OF FACT

. . . .

5. Oral swabs taken from Linda Donahew's mouth during the post-mortem sexual assault examination contained semen from an unknown individual. . . .

6. On October, 14, 2005, the Tarrant County Medical Examiner's Office conducted STR DNA testing on the oral swab. . . .

. . . .

8. The STR profile for the sperm fraction contained a mixture of two individuals—Ms. Donahew and an unknown contributor. . . .

9. On October 18, 2005, the Texas Department of Public Safety CODIS Laboratory ran a routine DNA database search which identified a match between the oral swab's unknown male contributor and [Appellant's] previously submitted DNA specimen. . . .

10. On December 19, 2005, the Tarrant County Medical Examiner's Office conducted STR DNA testing on a saliva swab taken from [Appellant]. *. . .*

11. The DNA analyst concluded that [Appellant] cannot be excluded as the contributor of the male component of the sperm fraction mixture. . . .

12. The DNA analyst calculated that at least 99.999% of the Caucasian, African-American, and Southwestern Hispanic populations can be excluded as a possible contributor to the sperm fraction mixture. . . .

13. [Appellant] cannot be excluded as the contributor of the most significant biological evidence—the semen found in Ms. Donahew's mouth.

14. Given the previously-tested DNA evidence inculpating [Appellant] and its high-probative value, it is unlikely that newer testing of this evidence or any other evidence would provide results which would exonerate him.

15.  [Appellant] does not meet the article 64.01 requirements for post-conviction forensic DNA testing.

16.  [Appellant] does not meet the article 64.03 requirements for post-conviction forensic DNA testing.

<u>CONCLUSIONS OF LAW</u>

. . . .

3.  It is unlikely that newer testing of this evidence or any other evidence would provide results which would exonerate [Appellant]. . . .

. . . .

5.  A convicted person must establish that there exists a reasonable probability that exculpatory DNA testing of the evidence for which he seeks testing would prove his innocence.  . . .

6.  Given the previously-tested DNA evidence inculpating [Appellant] and its high-probative value, it is unlikely that newer testing of this evidence or any other evidence would provide results which would exonerate him.

Appellant brought this appeal.

**The Denial of Appellant's Motion**

We review the trial court's denial of a motion for DNA testing of biological material under a bifurcated standard.[15]  We afford almost total deference to a trial court's determination of issues of historical fact, but we review de novo the trial court's applications of the law to facts as long as those applications do not turn

---

[15] *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002), *cert. denied*, 539 U.S. 978 (2003).

11

on credibility and demeanor of witnesses.[16] The trial court did not receive live testimony on Appellant's second motion for DNA testing; we do not have a reporter's record related to the motion.

Chapter 64 of the code of criminal procedure allows a convicted person to file a motion for forensic DNA testing of evidence containing biological material.[17] Such a motion must be accompanied by an affidavit that is sworn to by the convicted person and that contains facts in support of the motion.[18] The biological material to be tested must have either not been previously tested, or if previously tested, the convicted person must show that "newer testing techniques . . . provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test."[19]

The trial court may order DNA testing of biological material only when identity was an issue in the case and the convicted person proves by a preponderance of the evidence that a conviction would not have occurred if exculpatory results had been obtained through testing of the material in

---

[16]*Id.*; *see Harbour v. State*, No. 02-10-00558-CR, 2011 WL 3795256, at *1 (Tex. App.—Fort Worth Aug. 25, 2011, no pet.) (mem. op., not designated for publication).

[17]*See* Tex. Code Crim. Proc. Ann. art 64.01(a)(1), (a-1); *State v. Swearingen*, 424 S.W.3d 32, 36 (Tex. Crim. App. 2014).

[18]Tex. Code Crim. Proc. Ann. art. 64.01(a-1).

[19]*Id.* art. 64.01(b); *see Swearingen*, 424 S.W.3d at 36.

question.[20]   Evidence that could establish the possibility of another DNA contributor to the scene of the crime does not meet this requirement when significant evidence supports the defendant's guilt.[21]

But in the case now before this court, the evidence of Appellant's guilt was far from overwhelming. His identity as the killer was hotly contested. DNA of both Appellant and an unknown male was found at the scene and inside Donahew's mouth. But there was no way to determine when the DNA was deposited or in what order it was deposited. DNA of Nix was also found. A truck was seen outside Donahew's home on the day of her death, but the truck was not definitively connected to a specific person. The only evidence of Appellant's killing Donahew was the purchased and suspect testimony of Smith that Appellant had confessed to engaging in consensual sexual activity with Donahew and accidentally strangling her. The medical testimony, however, described a fatal stab wound inflicted on Donahew while she was still alive. It was described

---

[20]Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(B), (2)(A); *Swearingen*, 424 S.W.3d at 38 ("In order to be entitled to DNA testing, the [movant] must show by a preponderance of the evidence (51%) that he would not have been convicted if the exculpatory results were available at trial."); *Ex parte Gutierrez*, 337 S.W.3d 883, 901 (Tex. Crim. App. 2011).

[21]*See Swearingen*, 424 S.W.3d at 38 (noting that when there is a "mountain of evidence" against the defendant, proof of another DNA contributor at the scene is not enough to exonerate him); *Qadir v. State*, No. 02-13-00308-CR, 2014 WL 1389545, at *4 (Tex. App.—Fort Worth Apr. 10, 2014, no. pet.).

as a wound intended to cause her death. Even Smith's testimony did not mention a knife.

Importantly, there was testimony that Donahew was concerned about an appointment to show her pickup truck to a man she had met at the stables who had said he might buy it from her. Nix had testified that he was at a club with Donahew shortly before her death and had seen her talking with a man whom Nix identified as Appellant. Nix testified that Donahew had given Appellant her phone number. This is not evidence that Appellant was the man Donahew had met at the stables, although neither is it evidence that she did not meet him originally at the stables.

We upheld the denial of Appellant's first request for DNA testing because he did not sustain his burden under the former law to show that he was blameless in the failure to perform the DNA tests before the trial.[22] The law has changed since the first request, and Appellant no longer bears that burden. The material Appellant asks to have tested in his second motion meets the requirements of the current articles 64.01 and 64.03 of the code of criminal procedure. Article 64.03 provides,

> (a) A convicting court may order forensic DNA testing under this chapter only if:
>
> (1) the court finds that:

---

[22] *Fain II*, 2012 WL 752652, at *18.

14

(A)     the evidence:

(i) still exists and is in a condition making DNA testing possible; and

(ii) has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;  and

(B)     identity was or is an issue in the case; and

(2)     the convicted person establishes by a preponderance of the evidence that:

(A) the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

(B) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

. . . .

(c) If the convicting court finds in the affirmative the issues listed in Subsection (a)(1) and the convicted person meets the requirements of Subsection (a)(2), the court shall order that the requested forensic DNA testing be conducted.[23]

Among the items that Appellant asks to be tested are untested hairs clutched in Donahew's hand and pubic hair found in her pubic area.  One of the hairs in her hand was identified as dog hair.  Other hairs from her hand were consistent with either the hair of Donahew or that of her sister, Bishop.  One hair from her hand, however, was not matched to Donahew, Bishop, or Appellant. Logic dictates a probability that the hair clutched in her hand is that of her killer.

---

[23]Tex. Code Crim. Proc. Ann. art. 64.03.

15

There is no suggestion of multiple assailants. Indeed, the evidence indicates a single assailant. As for the blood on the bathroom faucet handle, the medical examiner tied the only bleeding wound directly to Donahew's death. The blood was never tested, although it is possible to test the blood to determine whether it was contributed by a single person or whether the blood contains DNA from more than one donor.

Identity of the killer, as opposed to sexual partner, was hotly contested. Three men contributed DNA. Two men contributed DNA found in the oral swabs, Appellant and an unknown male, although the evidence supports a determination that there was a single assailant. Oral swabs taken by Dr. Peerwani showed that the samples contained DNA material consistent with the DNA of Donahew and a mixture containing one DNA sample consistent with that of the Appellant and a sample of male DNA foreign to both Donahew and Appellant. Although Donahew was strangled, and the strangulation was a cause of death, Dr. Peerwani testified that the knife wound to Donahew's neck was intended to cause her death.

Evidence that exculpates the innocent and ties the guilty to Donahew at the time of her death cannot be held to merely "muddy the waters." If the contributor of the untested hair in Donahew's hands is identified, for the first time in this case, we would know whether Nix, Appellant, or the unidentified male was with Donahew at the time of her death when she pulled hairs from his head. Additionally, identifying DNA other than Donahew's in the blood on the bathroom

16

faucet handle would be compelling evidence of the identity of the assailant, since the bleeding neck injury necessarily connects to Donahew's death.

The Texas Court of Criminal Appeals instructs us that

[t]he legislature's decision to broaden the scope of appeals to the courts of appeals is a significant factor in assessing the authority of those courts to review the article 64.04 findings.

We think that the courts of appeals have been given authority to consider the sufficiency of the evidence as well as other grounds of appeal.  The only limit that the statute placed on those courts was that they would not have jurisdiction of DNA-testing appeals in death-penalty cases.[24]

It is unlikely that a jury would have convicted Appellant of Donahew's murder had evidence that the DNA recovered from the hair clutched in Donahew's hands or from the blood on the faucet excluded Appellant as the donor.  Dr. Peerwani testified that the assailant inflicted the knife wound on Donahew's neck for the purpose of causing her death.  Discovering the donor of DNA mixed with Donahew's blood on the knife would be compelling evidence of guilt in causing Donahew's death.  The presence of DNA other than Appellant's would compellingly exculpate Appellant.

There is no way to tell from the record whether the blood on the Bic pen and in the closet was deposited in connection with Donahew's death.  We therefore overrule Appellant's issue as to those items.  But the trial court erred by denying Appellant's request for DNA testing of the hairs in Donahew's hands, the

---

[24]*Whitfield v. State*, 430 S.W.3d 405, 409 (Tex. Crim. App. 2014).

pubic hair, blood on the bathroom faucet, Donahew's fingernail clippings, male DNA discovered on the bra and shirt Donahew wore on the day of her death, and the knife. We therefore sustain Appellant's issue as to all those remaining items.

**Conclusion**

We sustain Appellant's sole issue in part and reverse in part the trial court's order denying his second motion for DNA testing. Specifically, we affirm the order as to the blood found on the Bic pen and in the closet, but we reverse the order as to the hairs in Donahew's hands, the pubic hair, blood on the bathroom faucet, Donahew's fingernail clippings, male DNA discovered on the bra and shirt Donahew wore on the day of her death, and the knife. We remand this case to the trial court for further proceedings in accordance with this opinion.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

LIVINGSTON, C.J., dissents without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 4, 2014

18