

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00232-CR

**VAUGHN BIRDWELL,**

Appellant

v.

**THE STATE OF TEXAS,**

Appellee

From the 54th District Court
McLennan County, Texas
Trial Court No. 95-324-C

## O P I N I O N

This is an appeal of the trial court's denial of a postconviction motion for forensic DNA testing.

### Background

Vaughn Birdwell was convicted of murder and sentenced to life in prison in January of 1996. The murder involved the violent stabbing death of Irene Mitchell, Birdwell's former girlfriend. Birdwell appealed, arguing that he was denied his constitutional right to be tried by a jury of twelve peers because one juror had a felony

conviction and should have been disqualified and that he did not receive a fair trial when the trial court denied his motion for mistrial following an audience member's outburst. This Court overruled those issues and affirmed Birdwell's conviction in an opinion issued on January 22, 1997. *Birdwell v. State*, No. 10-96-00032-CR (Tex. App.—Waco Jan. 22, 1997, pet. ref'd) (not designated for publication). In 1998, Birdwell filed an application for writ of habeas corpus with the Court of Criminal Appeals, and that court denied the application without a written opinion based on the trial court's findings. *Ex parte Birdwell*, No. WR-37,251-01 (Tex. Crim. App. June 3, 1998) (not designated for publication).

Birdwell then filed a series of postconviction motions for DNA testing and a related mandamus proceeding that are summarized in *Ex parte Birdwell*, Nos. 10-07-00020-CR and 10-06-00385-CR, 2007 WL 900634 (Tex. App.—Waco Mar. 21, 2007, no pet.) (mem. op.) (not designated for publication), *op. on reh'g, In re Birdwell*, 224 S.W.3d 864 (Tex. App.—Waco 2007, orig. proceeding). Birdwell's July 12, 2006 motion for DNA testing now before us asserts that testing of blood on a knife and swab samples of semen found in the victim will show the presence of a third person who Birdwell defended himself against and who may have sexually assaulted the victim and stabbed her. The trial court denied Birdwell's motion for DNA testing. Birdwell appeals that ruling, asserting three issues. We will affirm.

## Applicable Law

Article 64.01(b) of the Code of Criminal Procedure provides for the postconviction DNA testing of evidence containing biological material if that evidence

"was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense." TEX. CODE CRIM. PROC. ANN. art. 64.01(b) (Vernon 2006 & Supp. 2008). Under article 64.03(a), a court may order forensic DNA testing only if:

> (1) the evidence still exists in a condition making DNA testing possible and has been subjected to a sufficient chain of custody;
>
> (2) identity was or is an issue in the case; *and*
>
> (3) the convicted person establishes by a preponderance of the evidence that:
>
>> (A) he would not have been convicted if exculpatory results had been obtained from DNA testing; and
>>
>> (B) the request for testing is not made to unreasonably delay execution of sentence or the administration of justice.

*Id*. art. 64.03(a) (Vernon Supp. 2008) (emphasis added).

The trial court can order DNA testing only if the statutory preconditions are met. *Bell v. State,* 90 S.W.3d 301, 306 (Tex. Crim. App. 2002). We apply a bifurcated standard of review to the trial court's ruling. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). "[W]e afford almost total deference to a trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review *de novo* other application-of-law-to-fact issues." *Id.*

**Identity**

A threshold requirement for the trial court's ordering forensic DNA testing is that the defendant's identity was or is an issue in the case. *See* Act of April 25, 2003, 78th Leg., R.S., ch. 13, § 3, 2003 Tex. Gen. Laws 16 (current version at TEX. CODE CRIM.

PROC. ANN. art. 64.03(a)(1)(B)). Birdwell asserts that the identity of Irene's murderer is an issue based on (1) his trial testimony that a third person attacked him in Irene's home on the occasion in question and (2) because there was evidence of semen found in the victim. Birdwell contends that this third person attacked him and attacked, sexually assaulted, and murdered Irene. The trial court found that identity "was not, never was and is not now an issue."

We agree with the State and the trial court that Birdwell's identity as the person who stabbed and killed Irene is not and was not an issue in the case. The evidence at Birdwell's murder trial showed that Birdwell and Irene had had an up-and-down relationship for several years and, on the day in question, had been broken up for two or three weeks because Birdwell had "slipped" back into drug usage. On the day of the murder, they saw each other at a Narcotics Anonymous meeting, and they argued. Birdwell admitted that he was drinking that day and that he was "real depressed and hurt" and wanted to get back together with Irene. That night, around 12:30 a.m., he went to Irene's house and banged on the door and windows. Irene called 9-1-1. Several transcripts of calls to and from 9-1-1 from Irene's house were in evidence at Birdwell's trial:

| [9-1-1:] | 911. What's the emergency? |
|---|---|
| [Irene:] | Could you send a cruiser out to 2323 Reuter please. There is an ex-boyfriend, he is very violent, out beating on my door. |
| [9-1-1:] | Okay. Let me give you to police dispatch right quick, ma'am. |
| | (Phone rings.) |

[Dispatch:]    Dispatch.

[Irene:]    Yes.  Could you please send a cruiser to 2323 Reuter.  There is an ex-boyfriend pounding on -- on my doors and my windows, and I need some help.

[Dispatch:]    What's his name?

[Irene:]    Vaughn Birdwell.  He just broke a window.  He's headed in the house.  Please get in here.  He's -- please –

. . .

[Irene:]    Hello.

[Dispatch:]    Okay.  Is he -- is he still inside the house?

[Irene:]    Yes.

[Dispatch:]    Okay.  They're on their way.

[Irene:]    I'm cut.

[Dispatch:]    He cut you?

. . .

[Birdwell:]    Hey.

[9-1-1:]    911.

[Birdwell:]    We need an ambulance at 2323 Reuter right f***ing now.

[9-1-1:]    You need an ambulance?

[Birdwell:]    Right f***ing now.  Move it.

[9-1-1:]    What's the problem, sir?

[Birdwell:]    Do it.

[9-1-1:]    What's the problem?

[Birdwell:]    -- dying.

[9-1-1:]    Who's dying?

[Birdwell:]    Just do it.  A stab victim.

[9-1-1:]    A stab victim?

[Birdwell:]    Yeah.  Internal bleeding.  Hurry.

[9-1-1:]    Okay.  Who -- Who stabbed who?

[Birdwell:]    I did it.  And I'm standing right here.  Move.

[9-1-1:]    Who did you stab?

[Birdwell:]    Move.

[9-1-1:]    Who did you stab?

--

[Policeman]:  Who did you stab, sir?

[9-1-1:]    Irene Mitchell.

When police entered Irene's house, they found her dying of multiple stab wounds and found Birdwell, bloody knife in hand and covered in blood, talking on the phone with 9-1-1.  Birdwell had a cut on his thumb that was bleeding.

At his trial, Birdwell testified, claiming that, when he went into Irene's darkened bedroom, he was hit in the head from behind and cut on his hand.  In fear for his life, he pulled out his knife and began stabbing who he thought was attacking him.  When the person in front of him let go of his shirt, he stopped stabbing, turned on the light, and realized that he had been stabbing Irene.  While he was stabbing in the dark, the other person ran out of the house.

Birdwell admitted at trial that he stabbed Irene and that he had told the 9-1-1 operator he had stabbed Irene. His trial counsel asserted in opening statement ("Birdwell realized that he was the one who stabbed Irene Mitchell, and he was the one who at least caused some of the stab wounds to Irene Mitchell") and in closing argument in guilt-innocence ("I think the facts that you have seen is that without a question Vaughn Birdwell stabbed Irene. . . . He knows that he stabbed Irene.") and in punishment (". . . Vaughn Birdwell realizes that he killed Irene.") that Birdwell had stabbed Irene.

The purpose of DNA testing under article 64.03 is to provide an avenue by which a defendant may seek to establish his innocence by excluding himself as the perpetrator of the offense. *See Blacklock v. State,* 235 S.W.3d 231, 232-33 (Tex. Crim. App. 2007). Birdwell asserted self-defense against the "third person" in Irene's house, and the jury was charged on but rejected that theory in finding Birdwell guilty. The contested issue in his trial was not *who* stabbed and killed Irene, but *why* Birdwell stabbed her. Birdwell judicially admitted that he stabbed her. Identity was not and is not an issue, and the trial court did not err in so finding. *See Lyon v. State,* --- S.W.3d ---, --- & n.1, 2008 WL 4587242, at *2 & n.1 (Tex. App.—San Antonio Oct. 15, 2008, no pet. h.) (identity was not at issue where defendant had admitted he stabbed his wife in self-defense, and postconviction DNA testing is not for establishing a defense); *Reger v. State,* 222 S.W.3d 510, 514 (Tex. App.—Fort Worth 2007, pet. ref'd) (perpetrator's identity not at issue where defendant admitted to shooting victim in self-defense); *In re State ex rel. Villalobos,* 218 S.W.3d 837, 840-41 (Tex. App.—Corpus Christi 2007, orig. proceeding) (identity was

not at issue where defendant convicted of murder sought DNA testing to prove self-defense); *Roughly v. State,* 2003 WL 22450442, at *1 (Tex. App.—Dallas Oct. 29, 2003, pet. ref'd) (not designated for publication) (perpetrator's identity not at issue where defendant admitted to stabbing victim and throwing him off balcony in self-defense). We overrule Birdwell's third issue to the extent it asserts identity is or was at issue.

Birdwell's third issue also complains that the trial court erred in denying his motion because he established by a preponderance of the evidence that a reasonable probability exists that he would not have been convicted if exculpatory results had been obtained through DNA testing. But because identity was not and is not at issue in this case, and because Birdwell could be entitled to DNA testing only if identity was or is at issue, we need not address this complaint in his third issue. *See Roughly*, 2003 WL 22450442, at *2; TEX. R. APP. P. 47.1. For the same reason, we need not address Birdwell's first issue, which complains that the trial court erred in denying his motion because Birdwell proved evidence with biological material existed.

Birdwell's second issue asserts that the trial court erred because the State failed to comply with the statute by delivering to the court the evidence and a description of its condition or by explaining why the evidence could not be delivered to the court. *See* Act of April 3, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2, 3 (current version at TEX. CODE CRIM. PROC. ANN. art. 64.02(a)(2) (Vernon 2008)). But again, because identity was not and is not at issue in this case, we need not address Birdwell's second issue. *See Roughly,* 2003 WL 22450442, at *2; TEX. R. APP. P. 47.1.

We affirm the trial court's order denying Birdwell's postconviction motion for forensic DNA testing.


BILL VANCE
Justice

Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna
Affirmed
Opinion delivered and filed December 17, 2008
Publish
[CRPM]