**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00065-CR**
_____

**THOMAS AMBRIATI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 11-11408**

**MEMORANDUM OPINION**

A jury found Thomas Ambriati (Ambriati) guilty of two counts of aggravated sexual assault of B.H.,[1] a child younger than fourteen years of age. Tex.Penal Code Ann. § 22.021 (West Supp. 2014).[2] The jury assessed punishment

---

[1] We identify the victim by using initials. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

[2] Because the amendments to section 22.021 are not material to the elements of the offense for which Ambriati was charged and convicted, we cite to the current version of the statute.

1

at two twenty-five year sentences, to run consecutively. Ambriati filed a "Motion for DNA Re-Testing" under Chapter 64 of the Texas Code of Criminal Procedure (hereinafter "post-conviction motion"). *See* Tex. Code Crim. Proc. Ann. art. 64.01 (West Supp. 2014). Ambriati appeals the trial court's denial of his post-conviction motion. *See id.* art. 64.05 (West 2006). We affirm.

BACKGROUND

Underlying Trial and Conviction

This Court previously issued an opinion in Ambriati's appeal from his underlying trial and conviction. *See Ambriati v. State*, No. 09-11-00667-CR, 2012 Tex. App. LEXIS 7594 (Tex. App.—Beaumont Sept. 5, 2012, pet. ref'd) (mem. op., not designated for publication) (*Ambriati I*). We briefly reference the facts from *Ambriati I* as necessary to the issue before us in this appeal. We take judicial notice of the appellate record in *Ambriati I*. *See Jacobs v. State*, 115 S.W.3d 108, 112 (Tex. App.—Texarkana 2003, pet. ref'd) (concluding that appellate court may take judicial notice of contents of its own file from direct appeal when considering issues relating to applicant's motion for DNA testing).

In January of 2011, Ambriati was indicted for two counts of aggravated sexual assault of a child younger than fourteen years of age, based on conduct that occurred on or about January 1, 1999. The victim, B.H., was twenty-four years old

at the time of trial, and she testified that Ambriati is her stepfather. *Ambriati I*, 2012 Tex. App. LEXIS 7594, at \*1. According to B.H., shortly before January 1, 1999, when B.H. was eleven years old, Ambriati touched her breasts and vagina, outside her clothes, and he put her hands on his penis. *Id.* She stated that eventually, Ambriati began touching her underneath her clothes and also made her touch him in the same manner. *Id.* at \*2. B.H. further testified that, a few days before her twelfth birthday, Ambriati penetrated her mouth and her sexual organ with his sexual organ. *Id.* She explained that Ambriati continued to sexually assault her two to three times a week for years, sometimes as many as five times a week, until she was seventeen years old. *Id.* B.H. testified that Ambriati told her that, if she told her mother, her mother would not believe her, her mother would leave, and that B.H. would then be to blame for breaking up the family. *Id.* B.H. also testified that Ambriati impregnated her when she was seventeen years old, and that Ambriati continued to sexually assault her throughout her pregnancy and after the birth of her child. *Id.*

B.H. contacted an attorney about prosecuting Ambriati and gave a statement to police after B.H. experienced "flashbacks" and "nightmares" about Ambriati. *Id.* at \*\*4-5. B.H. explained that she started having nightmares after an out-of-state job opportunity for her husband arose, and Ambriati left her a threatening message that

3

she could not leave the state with their child. *Id.* at \*\*3-5. According to B.H., she had forgotten the sexual assaults, but the nightmares ensuing from Ambriati's threatening message caused her to remember Ambriati's sexual assaults from the time she was eleven years old. *Id.*

A police officer with experience investigating sex crimes testified that lack of recall or delayed recall of sexual assault is typical or not uncommon among victims of sex crimes. *Id.* at \*\*5-6. Another police officer testified at trial that DNA samples were collected from Ambriati, from B.H., and from the child. *Id.* at \*5. A forensic DNA analyst testified that, upon analyzing the DNA samples, she determined there was a greater than 99% probability that Ambriati is the father of B.H.'s child. *Id.* Two of B.H.'s half-brothers testified at trial that they never noticed anything that made them concerned that a sexual relationship existed between Ambriati and B.H. *Id.* at \*\*6-7. B.H.'s mother testified that she never noticed anything unusual between Ambriati and B.H. *Id.* at \*7.

Ambriati testified that he only had intercourse with B.H. once, when she was seventeen years old, and that it was consensual. *Id.* He denied having sex with B.H. when she was younger. *Id.* Ambriati's attorney questioned Ambriati at trial, and the following exchange occurred:

4

Q. Did you end up having sex with [B.H.] . . . ?

A. Yeah.

. . . .

Q. You can't explain it, can't justify it, right, that it happened, right?

A. I thought afterwards.

Q. I'm sorry?

A. I felt I knew afterwards.

Q. Well, do you think that alcohol played a part?

A. That's not an excuse.

Q. It's not an excuse, but do you think it played a part?

A. I don't want to say because that sounds like an excuse.

Q. Was that the only time that you ever had sex with her?

A. Uh-huh.

Q. Is that a yes?

A. Yes.

Q. And as a result of that, did she become pregnant?

A. Yeah, I guess.

5

Q. And you don't deny that that's your child then if the DNA indicates it?

A. Yeah, if the DNA says it is.

The jury convicted Ambriati on both counts. *Id.* at *1. In the appeal of his conviction, Ambriati challenged the legal sufficiency of the evidence to support the convictions. *Id.* at **7-8. We overruled his sufficiency challenge, explaining that "[v]iewing all of the evidence in the light most favorable to the verdict and deferring to the jury's responsibility to weigh the evidence and to draw reasonable inferences therefrom, we conclude that the evidence is legally sufficient to support the verdict." *Id.* at *10. The Court of Criminal Appeals denied Ambriati's request for discretionary review. *In re Ambriati*, No. PD-0119-14, 2014 Tex. Crim. App. LEXIS 618 (Tex. Crim. App. Apr. 16, 2014). We issued our mandate regarding his conviction on October 30, 2012.

Ambriati's Post-Conviction Motions Relating to DNA Testing

On November 12, 2014, Ambriati filed a "Motion Requesting Appointment of Counsel for DNA Testing" with the trial court. The trial court denied the motion by order dated December 2, 2014, explaining that "reasonable grounds do not exist

for the filing of a motion for post-conviction DNA testing[,]" citing the requirements of Article 64.01(c). *See* Tex. Code Crim. Proc. Ann. art. 64.01(c).[3]

On December 2, 2014, Ambriati filed a pro se "Motion for DNA Re-Testing Under Chapter 64 of the Texas Code of Criminal Procedure" with the trial court, requesting "testing and/or re-testing" of hair, blood, or buccal swabs from himself, from B.H., and B.H.'s child. *See id.* art. 64.01. In his post-conviction motion, Ambriati argued that his conviction "was based predominantly on the DNA evidence[]" and was "the only alleged evidence that any purported sexual assault ever occurred," but that there were problems in the chain of custody and "there was a high likelihood of contamination and/or tampering from the very onset[.]"

---

[3] Article 64.01(c) provides as follows:

A convicted person is entitled to counsel during a proceeding under this chapter. The convicting court shall appoint counsel for the convicted person if the person informs the court that the person wishes to submit a motion under this chapter, the court finds reasonable grounds for a motion to be filed, and the court determines that the person is indigent. Counsel must be appointed under this subsection not later than the 45th day after the date the court finds reasonable grounds or the date the court determines that the person is indigent, whichever is later. Compensation of counsel is provided in the same manner as is required by:
> (1) Article 11.071 for the representation of a petitioner convicted of a capital felony; and
> (2) Chapter 26 for the representation in a habeas corpus hearing of an indigent defendant convicted of a felony other than a capital felony.

Tex. Code Crim. Proc. Ann. art. 64.01(c) (West Supp. 2014).

Ambriati stated in his post-conviction motion that it is his "belief" that the police detective was hostile to Ambriati. He further argued that the DNA evidence concerned his paternity of a child that B.H. had when B.H. was more than seventeen years old, but he was being tried for sexual assaults that allegedly occurred upon B.H. when she was eleven years old. Ambriati argued that "he is in no way the biological father of [B.H.'s] child[], and that the DNA evidence could have been contaminated, tainted, and/or tampered with." According to Ambriati, "[t]he 'DNA TEST' was material to the conviction, and is also material to the innocence of Movant, as the prosecutor stated, 'no one would believe this, but the DNA proves it.'"[4]

The trial court denied Ambriati's post-conviction motion, without conducting a hearing, and issued a written order dated December 4, 2014. In the order the trial court states that "movant has failed to establish, by a preponderance of the evidence, that he would not have been convicted if exculpatory results had been obtained through DNA testing."

---

[4] The trial record reflects that, in her closing argument in the underlying trial, the prosecutor stated:

> . . . [Ambriati's] lied to Detective S[.] that he's never, ever had sex with a child. He's never, ever had sex with [B.H.], which, of course, was blown out of the water by the DNA results. . . . [N]obody would believe [B.H.]. Nobody would believe that this happened until the DNA results came back, and he lied about it.

8

ISSUES ON APPEAL

On appeal, Ambriati states in his brief that the trial court erred in denying his post-conviction motion for DNA testing because "the Convicting Court cannot say with certainty, that the jury would have believed the testimony of the alleged Victim, aside from the DNA evidence, that may have been contaminated." Ambriati generally alleges that his constitutional rights were violated by the ruling of the trial court denying his post-conviction motion, but he does not brief any of his alleged constitutional challenges. More specifically he states:

> the Appellant's Due Process Rights, that are guaranteed under the 14th Amendment of the United States Constitution, to confront all evidence and testimony against him, and also, his 6th Amendment Rights to a fair hearing, guaranteed by the U.S. Constitution and Art. I § 10 of the Texas Constitution, were violated by the Trial Court's decision to deny the DNA re-testing of Appellant, the alleged Victim, and alleged Victim's child.

Ambriati also contends that the police detective who obtained the DNA samples was biased against Ambriati, and that the facts would cause "a reasonable person to question the integrity of these Officer's [sic] and thus their ability to properly collect and submit the material in question." Further, he states that "tainting or tampering of the evidence could have resulted." He argues that other than the DNA test that showed he was the biological father of B.H.'s child, "[t]here is 'NO OTHER' evidence," and that the alleged Victim's testimony was not credible,

9

because her initial statements and the testimony were based on her dreams of alleged sexual encounters. According to Ambriati,

> [t]he trial[] seemed to "CENTER AROUND DNA TEST RESULTS", that showed Appellant purportedly fathered the alleged Victim's oldest child. Said child was conceived 3 months prior to [B.H.'s] 18th birthday . . . and had nothing to do with the 11 to 14-year-old age range that Appellant was on trial for.

The State contends that the trial court did not err in denying Ambriati's post-conviction motion. The State argues that Ambriati failed to meet the statutory requirements under Chapter 64, and even if Ambriati could show that someone else was the father of the child, Ambriati has failed to establish, by a preponderance of the evidence, that he would not have been convicted if exculpatory results had been obtained through DNA testing.

STANDARD OF REVIEW

Generally, we review a trial court's decision on a motion for DNA testing under a bifurcated standard of review. *See Whitaker v. State*, 160 S.W.3d 5, 8 (Tex. Crim. App. 2004). We afford almost total deference to the trial court's determination of issues of historical fact and issues of application of law to fact that turn on credibility and demeanor of witnesses. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). We review de novo issues of the application-of-law-to-fact questions that do not turn on the credibility and demeanor of witnesses. *Id*. In

10

this case, the trial court did not conduct a live hearing; therefore, we review the trial court's denial of DNA testing de novo. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005).

POST-CONVICTION DNA TESTING

"There is no free-standing due-process right to DNA testing[.]" *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011) (citing *District Attorney's Office v. Osborne*, 557 U.S. 52, 61-63 (2009)). Chapter 64 allows a convicted person to file in the convicting court a motion for post-conviction DNA testing of biological evidence. *Whitfield v. State*, 430 S.W.3d 405, 407 (Tex. Crim. App. 2014); *see* Tex. Code Crim. Proc. Ann. art. 64.01(a). "If the motion meets specific requirements and the court grants the motion, article 64.04 requires that 'the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted.'" *Whitfield*, 430 S.W.3d at 407 (quoting Tex. Code Crim. Proc. Ann. art. 64.04 (West Supp. 2014)). Under Article 64.01(c), a convicted person is entitled to the appointment of counsel if the person informs the court that the person wishes to submit a motion under Chapter 64, the court finds reasonable grounds for a motion to be filed, and the court determines the

11

person is indigent. Tex. Code Crim. Proc. Ann. art. 64.01(c); *see also Lewis v. State*, 191 S.W.3d 225, 227-28 (Tex. App.—San Antonio 2005, pet. ref'd).

The purpose of post-conviction DNA testing is to provide a means through which a defendant may establish his innocence by excluding himself as the perpetrator of the offense of which he was convicted. *See Blacklock v. State*, 235 S.W.3d 231, 232-33 (Tex. Crim. App. 2007); *Birdwell v. State*, 276 S.W.3d 642, 645-46 (Tex. App.—Waco 2008, pet. ref'd). DNA testing under Chapter 64 is not to be used for the purpose of attacking the credibility of a trial witness. *See Bates v. State*, 177 S.W.3d 451, 454 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("attacks on credibility are not a valid reason for DNA testing under chapter 64").

A convicting court may order forensic DNA testing only if the statutory preconditions of Chapter 64 are met. *See Holberg v. State*, 425 S.W.3d 282, 284 (Tex. Crim. App. 2014); *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002). Article 64 contains multiple threshold requirements that must be met before an applicant is entitled to such testing. *See, e.g.*, Tex. Code Crim. Proc. Ann. arts. 64.01 (motion), 64.03 (West Supp. 2014) (requirements; testing). The convicted person bears the burden of satisfying all Chapter 64 requirements. *See Wilson v. State*, 185 S.W.3d 481, 484 (Tex. Crim. App. 2006). A motion for post-conviction DNA testing may request testing of evidence "containing biological material."

12

Tex. Code Crim. Proc. Ann. art. 64.01(a-1). As a threshold matter, therefore, the convicted person is required to show the evidence sought to be tested contains biological material. *Swearingen v. State*, 303 S.W.3d 728, 732 (Tex. Crim. App. 2010). Chapter 64 governs motions for forensic DNA testing and therein it defines "biological material" in relevant part as:

> . . . an item that is in possession of the state and that contains blood, semen, hair, saliva, skin tissue or cells, fingernail scrapings, bone, bodily fluids, or other identifiable biological evidence that may be suitable for forensic DNA testing[.]

Tex. Code Crim. Proc. Ann. art. 64.01(a)(1). On the motion of a convicted person, a trial court may order forensic DNA testing of the biological material only if (1) the court finds: the evidence still exists and is in a condition making DNA testing possible, and the evidence has been subjected to a sufficient chain of custody to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; and (2) the court finds that identity was or is an issue in the case; and (3) the convicted person establishes by a preponderance of the evidence that: he or she would not have been convicted if exculpatory results had been obtained through DNA testing, and the request for testing is not made to unreasonably delay the execution of sentence or administration of justice. *Id.* art. 64.03(a).

13

The motion may request DNA testing only of evidence that either was not previously subjected to DNA testing or, although previously subjected to DNA testing, can be subjected to testing with newer testing techniques that would yield more accurate and probative results. *See id.* art. 64.01(b). For material that has previously been DNA-tested, the movant must do more than assert that new testing techniques would yield more accurate results; he must also show a reasonable likelihood that the results of new DNA testing would be more probative. *See Routier v. State*, 273 S.W.3d 241, 250 (Tex. Crim. App. 2008).

The statute expressly requires a convicted defendant to show "by a preponderance of the evidence that . . . the person would not have been convicted if exculpatory results had been obtained through DNA testing[.]" *See* Tex. Code. Crim. Proc. Ann. art. 64.03(a)(2)(A). The Court of Criminal Appeals has interpreted the phrase "the person would not have been convicted if exculpatory results had been obtained through DNA testing" to mean a "greater than a 50% chance that he would not have been convicted if DNA testing provided exculpatory results. . . ." *Leal v. State*, 303 S.W.3d 292, 297 (Tex. Crim. App. 2009); *see also Holberg*, 425 S.W.3d at 286-87. "A 'favorable' DNA test result must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction; otherwise, DNA testing would simply 'muddy the waters.'" *Gutierrez*,

14

337 S.W.3d at 892 (quoting *Rivera*, 89 S.W.3d at 59). If the favorable or exculpatory test result would not change the probability that the inmate would have been convicted, then there is no justification to order any testing, and a movant has not met his burden if there is sufficient evidence, other than the evidence in question, to establish his guilt. *Id.*; *Bates*, 177 S.W.3d at 453. Article 64.01(a-1) also requires that the motion be accompanied by an affidavit "containing statements of fact in support of the motion." *See* Tex. Code Crim. Proc. Ann. art. 64.01(a-1).

A person's post-conviction motion under Chapter 64 does not involve any constitutional considerations. *Gutierrez*, 337 S.W.3d at 893 (citing *Prible v. State*, 245 S.W.3d 466, 469 (Tex. Crim. App. 2008)). The trial court is not required to hold a hearing on the motion, the defendant is not entitled to the same presumption of innocence or to the application of concepts like the exclusionary rules, and he does not have a right to confront the witnesses against him. *Id*. (also citing *Rivera*, 89 S.W.3d at 58-59, and *Thompson v. State*, 123 S.W.3d 781, 784-85 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd)). With respect to a Chapter 64 proceeding, the trial court can also consider statements that were or should have been inadmissible at trial. *Id*. at 894.

CONSTITUTIONAL CHALLENGES

Although Ambriati generally alleges that the trial court violated his "due process" rights, his "right to counsel," and "access to court," he failed to adequately brief his constitutional challenges relative to his post-conviction motion. Texas Rule of Appellate Procedure 38.1(i) provides that the "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Conclusory arguments that cite no authority present nothing for our review. *See Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992); *Atkins v. State*, 919 S.W.2d 770, 774-75 (Tex. App.—Houston [14th Dist.] 1996, no pet.).

Ambriati presents this Court with only an abstract assertion that his rights were violated, with no argument or analysis to support his claims. He does not address any of the governing legal principles under Chapter 64 or the basis for his belief that his constitutional rights have been violated, nor does he apply any such constitutional principles to the facts of this case. Ambriati's brief on this issue falls short of the minimum required to present an issue for appellate review. Because Ambriati failed to adequately brief the constitutional challenges, he waived error. *See Greer v. State*, 999 S.W.2d 484, 488 n.3 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Furthermore, as we have noted above, a person's post-conviction

16

motion under Chapter 64 does not involve any constitutional considerations. *Gutierrez*, 337 S.W.3d at 893 (citing to *Prible*, 245 S.W.3d at 469). Ambriati does not have the same rights in the Chapter 64 post-conviction proceeding that he had in his criminal trial. Accordingly, we overrule his constitutional challenges.

DENIAL OF POST-CONVICTION MOTION

With respect to his contention that the trial court erred in denying his post-conviction motion under Chapter 64, we begin by noting that Ambriati's post-conviction motion sought the collection of new or additional DNA evidence from the parties involved in the case. Ambriati alleges that the hair, blood or buccal swab that the State used for determining whether he was the father of the child was contaminated, and he complains about the chain of custody of the materials that were previously DNA-tested at trial. His motion did not request testing or retesting of evidence that "still exists[.]" *See id.* art. 64.03(a)(1)(A)(i).

In his affidavit in support of the post-conviction motion, Ambriati restated his objections to trial testimony concerning the chain of custody of materials subjected to DNA testing and he challenged the credibility of the witnesses who testified at trial as to the chain of custody. At trial, Ambriati did not file a motion for new trial based on chain of custody issues nor did he raise this point as an issue

17

in the appeal of his conviction. *See generally Ambriati*, 2012 Tex. App. LEXIS 7594.

Chapter 64 requires the movant to show that the evidence to be tested still exists and that it was subjected to a sufficient chain of custody. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(A). In Ambriati's post-conviction motion he argues that the previously-tested DNA material was *not* subjected to a chain of custody sufficient to establish "that it has not been substituted, tampered with, replaced, or altered in any material respect." *Id.* Furthermore, Ambriati now seeks to have the victim, the child, and himself submit new DNA samples.

At trial, B.H. testified that Ambriati, her stepfather, began sexually assaulting her when she was eleven years old and that it continued two to three times a week for years, sometimes as many as five times a week, until she was seventeen years old. B.H. also testified that Ambriati impregnated her when she was seventeen years old. *See generally Ambriati I*, 2012 Tex. App. LEXIS 7594. Ambriati's request for further collection of additional DNA samples and his contention that the samples previously collected and tested prior to his trial may have been tainted or tampered with by what he describes as a "biased" detective possibly relate to the credibility of the witnesses pertaining to whether he is the father of the child, but would not be exculpatory regarding the alleged sexual

assault for which Ambriati was indicted and convicted and would do no more than merely "muddy the waters." *See Rivera*, 89 S.W.3d at 59 (citing *Kutzner v. State*, 75 S.W.3d 427, 439 (Tex. Crim. App. 2002)). Attacks on credibility are not valid reasons for ordering post-conviction DNA testing under Chapter 64. *Bates*, 177 S.W.3d at 454. Accordingly, the trial court could have reasonably concluded that Ambriati failed to establish the statutory requirements under Chapter 64.[5] The testing Ambriati seeks would neither determine the identity of the person who sexually assaulted B.H. nor exculpate him and the trial court did not err in concluding that testing was not required. *See Prible*, 245 S.W.3d at 470; *Bell*, 90 S.W.3d at 306.

---

[5] Compare to *Blacklock v. State*, 235 S.W.3d 231 (Tex. Crim. App. 2007). In *Blacklock*, the defendant had been convicted of aggravated sexual assault and aggravated robbery. At trial, the victim identified the defendant as her assailant, but the DNA test result of the semen taken from the victim was inconclusive. In the trial, the State relied upon the presence of semen as evidence that the victim was sexually assaulted. The defendant filed a post-conviction motion for DNA testing on the semen that was present on the victim's undergarment arguing that due to improved DNA testing techniques it would exclude him as her assailant. The trial court denied the motion and the court of appeals affirmed on several grounds, including that the defendant was not entitled to the testing because identity was not an issue, placing reliance upon the identification by the victim. The Court of Criminal Appeals reversed, finding that testing was required when the evidence showed that the victim's attacker was the donor of the material for which testing was required. To this end, the Court stated, "the legislative history of Chapter 64 of the Texas Code of Criminal Procedure very clearly shows that this is precisely the situation in which the Legislature intended to provide post-conviction DNA testing." *Id.* at 232-33.

We overrule Ambriati's challenges and affirm the trial court's order denying Ambriati's post-conviction motion.

AFFIRMED.

                           _____

                              LEANNE JOHNSON
                                 Justice

Submitted on August 6, 2015
Opinion Delivered November 12, 2015
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.